# IN THE SUPREME COURT OF IOWA

No. 06–1954

Filed February 13, 2009

**LARSON MANUFACTURING COMPANY, INC.,
and ATLANTIC MUTUAL COMPANIES,**

Appellants,

vs.

**JULIE THORSON,**

Appellee.

---

Appeal from the Iowa District Court for Polk County, Carla T. Schemmel, Judge.

Employer and its insurance carrier appeal from the district court's decision affirming a decision of the workers' compensation commissioner. **AFFIRMED IN PART AND REVERSED IN PART.**

Jeffrey W. Lanz of Huber, Book, Cortese, Happe & Lanz, P.L.C., West Des Moines, for appellants.

Mark S. Soldat of Soldat & Parrish-Sams, P.L.C., West Des Moines, for appellee.

**HECHT**, **Justice**.

We reversed and remanded this case to the workers' compensation commissioner in *Thorson v. Larson Mfg. Co.*, 682 N.W.2d 448, 451 (Iowa 2004).[1]  After the parties submitted additional evidence on remand, the commissioner found Thorson sustained a compensable cumulative injury, and ordered the employer and its insurance carrier to pay compensation, interest, medical expenses, and the cost of a medical examination under Iowa Code section 85.39 (2005).  On judicial review, the district court affirmed the commissioner's remand decision.  We affirm in part and reverse in part the commissioner's decision.

### I.    Factual and Procedural Background.

Julie Thorson began working for Larson Manufacturing Company, Inc.,[2] a storm door manufacturer in Lake Mills, Iowa in 1974.  Her job duties evolved over the years, but consistently involved continuous, repetitive movement and occasionally required overhead work.  For approximately the first twenty years of her employment, Thorson's job

---

[1]The arbitration decision had excluded the report of Dr. Justin Ban (offered by Thorson and asserting she sustained a permanent cumulative injury to her shoulders, upper extremities, and cervicothoracic spine) on the ground it was not served within the deadline established in a hearing assignment order.  The decision awarded compensation for Thorson's lower extremity injury, but determined Thorson failed to prove she sustained a compensable cumulative injury.  On judicial review, the district court reversed and remanded to the commissioner for application of the manifestation standard discussed in our decision in *Herrera v. IBP, Inc.,* 633 N.W.2d 284, 288 (Iowa 2001) (establishing that a cumulative injury is manifest when "the claimant, as a reasonable person, would be plainly aware (1) that he or she suffers from a condition or injury, and (2) that this condition or injury was caused by the claimant's employment") and directed the commissioner to consider Dr. Ban's report only to the extent that it rebutted certain medical evidence offered by the employer.  On appeal, we reversed the commissioner's decision and remanded to the agency for "reconsideration of [Thorson's] claim on the record already made, with the addition of the Ban report and any rebuttal evidence that the commissioner allows." *Thorson v. Larson Mfg. Co.*, 682 N.W.2d at 451.

[2]Atlantic Mutual Companies provided workers' compensation insurance coverage to Larson during times at issue in this case.  In the interest of brevity, we will refer jointly to Larson and Atlantic as "Larson."

duties required her to perform the same repetitive physical tasks for eight hours each day. In 1995 or 1996, Larson implemented a job rotation program which allowed employees to change their work station each day. The program was later modified to allow Thorson and other employees to change stations after each half-day of work.

Thorson first sought treatment for neck and shoulder pain in 1986 from Dr. Ronald Masters, a chiropractor, who offered a free clinic for patients. Thorson discontinued chiropractic treatments after four months, however, when free services were no longer offered because her health insurance did not provide coverage for chiropractic care.

Thorson next received relevant medical care in August 1992 when Larson referred her to Dr. Colby, a family physician, for diagnosis and treatment of shoulder and wrist symptoms. Dr. Colby diagnosed lateral epicondylitis, and placed Thorson on light duty until October 28, 1992, when she was released to full duty with no physician-imposed physical restrictions.

Thorson again consulted Dr. Colby for work-related pain on April 26, 1996. Thorson reported she had been experiencing "knots" in her lower back, shoulders, and elbows for the past eighteen months. Dr. Colby diagnosed back spasms and medial epicondylitis, and again placed Thorson on light duty. Although Thorson was informed no real light-duty jobs were available, Larson did assign her to a job requiring less exertion than her usual work assignments. Dr. Colby referred Thorson to Dr. Toth for physical therapy in July 1996.

Dr. Toth diagnosed chronic cervical and thoracic spine strain with somatic dysfunction, and recommended Thorson continue light-duty restrictions with minimal overhead work and less frequent rotating movement. He noted it was difficult for Thorson to work within her

physical restrictions, apparently referring to the unavailability of light-duty jobs at Larson's plant. Thorson experienced modest improvement of her condition at times from the physical therapy.

On November 25, 1996, after completing the therapy under Dr. Toth's care, Thorson was transferred from Larson's sub-assembly department to the door line. Although this transfer decreased the work-related stress on her back and shoulders, Thorson continued to receive treatment from Dr. Colby for thoracic and cervical spasm, bilateral tendonitis, and lateral epicondylitis during the interval between November 1996 and April 1998.

In May 1998, Thorson began receiving treatment from Dr. Clarence Carlson, who ordered a functional capacity evaluation and recommended a psychiatric consultation to rule out any underlying mental disorder. The functional capacity evaluation performed on July 8 and 9, 1998 documented Thorson's difficulty with overhead lifts and sustained overhead work due to pain. The evaluator recommended frequent rest breaks during sustained overhead activities and work-station accommodations to avoid the need for floor-to-waist level lifting.

On July 13, 1998, Thorson underwent a psychiatric evaluation by Dr. Karen Gosen. Dr. Gosen diagnosed major depression "with sleep, appetite, energy, and mood changes," and "chronic pain syndrome." In August 1998, Dr. Carlson informed Thorson he believed she had fibromyalgia, and that she might benefit from chronic pain management.

The only documented medical treatment Thorson received between August 1998 and May 1999 was for an injury to her right knee sustained during the functional capacity evaluation in July 1998.[3]

---

[3]The knee injury was diagnosed as a meniscal tear and treated with surgery. The commissioner found this injury compensable, and it is not at issue in this appeal.

Thorson again consulted Dr. Colby for back spasms in May 1999. On July 23, 1999, Thorson filed two petitions for workers' compensation benefits. The first petition alleged the July 1998 right leg injury. The second petition alleged Thorson was disabled at "various times" from 1993 to 1999, and that she sustained a cumulative injury to her upper back, neck, shoulders, and arms "on or about July 20, 1999."[4]

Thorson returned to Dr. Carlson for treatment in January 2000. She described the pain in her neck, upper thoracic spine, shoulders, and arms as essentially unchanged, but reported increased symptoms in her elbows. Dr. Carlson concluded Thorson was experiencing "low grade bilateral epicondylitis," which he characterized as "an acute/new problem." Dr. Carlson referred Thorson to Dr. Jeffrey Brault, who had experience in the treatment of chronic musculoskeletal and chronic pain disorders. Dr. Brault diagnosed "chronic myalgic pain syndrome" in February 2000, prescribed an antidepressant, ordered physical therapy for the shoulder and neck symptoms, and directed a continuation of Thorson's work restrictions.

Prior to the arbitration hearing on her petitions for workers' compensation benefits, Thorson underwent a medical exam by Dr. Justin Ban.[5] Dr. Ban diagnosed multiple work-related injuries: a surgically treated right medial meniscal tear, cumulative trauma disorder, chronic cervicothoracic strain/sprain, and chronic pain disorder. His report dated October 10, 2000 opined Thorson's injuries caused a total whole-person work related impairment of sixteen percent, consisting of five

---

[4]July 20, 1999 was the last day Thorson worked prior to filing the two petitions.

[5]This examination was requested by Thorson pursuant to Iowa Code section 85.39 (1999) (authorizing claimants to obtain "a subsequent examination by a physician of [their] own choice" at the employer's expense after the employer has obtained an evaluation of the claimant's disability).

percent for the cervicothoracic spine condition, one percent for the right knee, and ten percent for the "chronic pain disorder associated with psychological factors and cumulative trauma disorder."[6]  As we have already noted, Dr. Ban's report (the only extant medical opinion providing a permanent impairment rating of Thorson's claimed cumulative injury prior to the arbitration hearing) was excluded from evidence by the deputy, but this court ordered the agency to consider Dr. Ban's opinion on remand.

Larson sought and obtained leave of the commissioner on remand to develop and present medical evidence rebutting the opinions of Dr. Ban.  This evidence included a January 2005 report from Dr. Donna Bahls, a board certified independent medical examiner.  Dr. Bahls opined Thorson experienced "chronic myofascial pain which is diffuse but [incompatible with] the criteria for myofascial pain syndrome or fibromyalgia."  Although Dr. Bahls believed work activities "could temporarily aggravate or cause [the] underlying condition to be more symptomatic," she concluded work activities were not the cause of Thorson's condition.  Dr. Bahls opined Thorson suffered no work-related whole body impairment.

To rebut Dr. Ban's finding of psychological impairment, Larson also offered on remand a January 2005 medical report authored by Dr. Charles Wadle, a psychiatrist.  Dr. Wadle opined there was "no

---

[6]The hearing record did include other medical evidence supporting Thorson's cumulative injury claim.  For example, Dr. Colby reported in October 2000 it was probable that Thorson's work activities at Larson were a substantial, but not necessarily the exclusive, factor causing the various conditions he treated in Thorson's shoulder, upper extremities, and cervicothoracic spine.  Dr. Colby further opined Thorson's "work activities did cause this condition more or less continuously during the period 1992 to the present time . . . and will cause permanent impairment."  He did not, however, express an opinion as to whether such impairment had yet manifested, or, if it had, its extent.

discernable psychiatric diagnosis for [Thorson] at this time," and therefore disputed Dr. Ban's impairment rating.

As Dr. Ban's October 2000 opinion was quite dated by the time of the commissioner's remand proceeding, Thorson also sought to present new medical evidence for the agency's consideration. She underwent an examination by Dr. John Kuhnlein in March 2005. Dr. Kuhnlein diagnosed chronic trapezius and scapulothoracic pain, and attributed a three percent whole-body permanent impairment to it. He concluded work activities were a substantial, but not necessarily the exclusive cause of Thorson's chronic pain and resulting impairment. Dr. Kuhnlein also allocated one percent whole-body permanent impairment to the right knee injury, but found no causal connection between Thorson's work activities and her shoulder, foot, and low-back complaints. Thorson requested the commissioner to order Larson to pay for the Kuhnlein examination under Iowa Code section 85.39.

In his remand decision, the commissioner found Thorson sustained a work-related cumulative injury on April 26, 1996, the date Thorson returned to Dr. Colby for treatment of her shoulder, back, and elbow pain.[7] The commissioner concluded Thorson's claims were not barred by the two-year statute of limitations because Thorson did not know, nor should she have known, the conditions would have a permanent adverse impact on her employment until she received Dr. Ban's report in 2000. The remand decision ordered Larson to pay

---

[7]Larson challenged this injury-date finding, claiming it had been deprived of notice and opportunity to be heard as to an injury date other than July 20, 1999, the cumulative injury date alleged in Thorson's petition. The commissioner rejected Larson's due process claim, however, reasoning Larson was given sufficient notice of potential alternative manifestation dates from Thorson's pleading of a cumulative injury date of "on or about July 20, 1999," and from Thorson's lengthy medical and employment history disclosed in the course of the administrative proceeding.

medical and transportation benefits, temporary partial benefits for the periods of August 31, 1992 through September 22, 1992; October 2, 1992 through October 12, 1992; April 26, 1996 through January 2, 1997; and April 9, 1998 through December 21, 1998,[8] and permanent partial disability benefits compensating for an industrial disability of twenty-five percent. In addition to the other relief granted, the remand decision ordered Larson to reimburse Thorson pursuant to Iowa Code section 85.39 for the full cost of Dr. Kuhnlein's medical evaluation.

Thorson requested a rehearing. The commissioner subsequently issued a rehearing decision awarding Thorson additional temporary total disability benefits for an additional period from January 8, 2000 to January 11, 2000, and providing Larson's obligation to pay permanent partial disability benefits should commence January 12, 2000. Larson also filed a motion for rehearing prompting a second rehearing decision which reduced the amount Larson was obligated to pay for Dr. Kuhnlein's examination.

On judicial review the district court affirmed the remand decision in all respects.

## II. Issues on Appeal.

Larson contends several errors require reversal of the commissioner's remand decision. Larson claims: (1) the finding of an injury date prior to July 20, 1999, and the award of temporary partial disability benefits are foreclosed by principles of issue preclusion, (2) its rights to reasonable notice and an opportunity to be heard were violated

---

[8]As Thorson's personnel records for 1992 were not in the record before the agency, the commissioner ordered Larson to pay temporary partial disability benefits for these periods, with the exact amount to be calculated by the parties. If the parties could not agree as to the amount of such benefits, they were directed by the remand decision to submit their calculations to the commissioner in furtherance of a supplemental ruling.

when the commissioner selected a cumulative injury date that is more than three years prior to the injury date alleged in Thorson's petition, (3) Thorson's cumulative injury claim is barred by the applicable statute of limitations, (4) the award of temporary partial benefits and of industrial disability benefits are not supported by substantial evidence, (5) the commissioner erred in awarding medical benefits under section 85.27 for treatment rendered before the cumulative injury date, and (6) the commissioner erred in ordering Larson to pay for more than one examination of Thorson under section 85.39.

### III.    Scope of Review.

Iowa Code chapter 17A governs the scope of our review in workers' compensation cases.  Iowa Code § 86.26.  It is well settled that " '[t]he interpretation of workers' compensation statutes and related case law has not been clearly vested by a provision of law in the discretion of the agency.' "  *Lakeside Casino v. Blue*, 743 N.W.2d 169, 173 (Iowa 2007) (citation omitted).  We therefore do not defer to the commissioner's interpretation of the law.  *Id.*; *see* Iowa Code § 17A.19(10)(*c*).

Factual determinations in workers' compensation cases, on the other hand, are " 'clearly vested by a provision of law in the discretion of the agency.' "  *Mycogen Seeds v. Sands*, 686 N.W.2d 457, 465 (Iowa 2004) (citation omitted).  Accordingly, we defer to the commissioner's factual determinations if they are based on "substantial evidence in the record before the court when that record is viewed as a whole."  Iowa Code § 17A.19 (10)(*f*).  "Substantial evidence" is:

> the quantity and quality of evidence that would be deemed sufficient by a neutral, detached, and reasonable person, to establish the fact at issue when the consequences resulting from the establishment of that fact are understood to be serious and of great importance.

Iowa Code § 17A.19(10)(*f*)(1). Thus, when we review factual questions delegated by the legislature to the commissioner, the question before us is not whether the evidence supports different findings than those made by the commissioner, but whether the evidence "supports the findings actually made." *St. Luke's Hosp. v. Gray*, 604 N.W.2d 646, 649 (Iowa 2000) (citing *Kiesecker v. Webster City Custom Meats, Inc.*, 528 N.W.2d 109, 110 (Iowa 1995)).

The application of the law to the facts is also an enterprise vested in the commissioner. *Mycogen Seeds*, 686 N.W.2d at 465. Accordingly, we reverse only if the commissioner's application was "irrational, illogical, or wholly unjustifiable." *Id.*; Iowa Code § 17A.19(10)(*l*). This standard requires us to allocate some deference to the commissioner's determinations, but less than we give to the agency's findings of fact. *See* Arthur E. Bonfield, *Amendments to Iowa Administrative Procedure Act, Report on Selected Provisions to Iowa State Bar Association and Iowa State Government* 70 (1998) ("[W]hen an agency is delegated discretion in applying a provision of law to specified facts the scope of review appropriately applied by courts must be deferential because the legislature decided that the agency expertise justifies vesting primary jurisdiction over that matter in the discretion of the agency rather than in the courts.").

We review constitutional claims de novo. *Wright v. Iowa Dep't of Corr.*, 747 N.W.2d 213, 216 (Iowa 2008).

We review the commissioner's determination on the statute of limitations issue for correction of errors at law. *Chapa v. John Deere Ottumwa Works*, 652 N.W.2d 187, 189 (Iowa 2002).

**IV.  Discussion.**

**A.  Issue Preclusion.**  Larson raises two issue preclusion claims on appeal.[9]  First, Larson notes the commissioner's appeal decision filed on March 26, 2001 observed that "Defendants would not have been reasonably put on notice by claimant's discovery answer that [Thorson] was actually alleging a date of injury in 1992 or 1996."  Larson contends this language precluded a finding in the subsequent remand proceedings that Larson had sufficient notice of the April 26, 1996 cumulative injury date to satisfy the applicable due process standard.  Second, Larson asserts the commissioner was precluded on remand from finding Thorson was entitled to temporary partial disability benefits because the agency's appeal decision had previously found Thorson failed to demonstrate eligibility for TPD benefits.

We follow a well-established analytical framework in deciding whether a party is precluded from re-litigating an issue.  The prerequisites for preclusion are:

> (1) the issue concluded must be identical; (2) the issue must have been raised and litigated in the prior action; (3) the issue must have been material and relevant to the disposition of the prior action; and (4) the determination made of the issue in the prior action must have been necessary and essential to the resulting judgment.

*Hunter v. Des Moines*, 300 N.W.2d 121, 123 (Iowa 1981) (citation omitted).  Larson's preclusion claims must fail because the subject issues were not decided in a "prior action."  The commissioner's appeal decision and the remand decision are parts of a single action, not adjudications of consecutive actions in which the doctrine of issue

---

[9]Thorson contends Larson failed to argue preclusion before the commissioner on remand, and consequently failed to preserve the issue for our review.  We nonetheless elect to decide them.

preclusion might have application. *Cf. State v. Pexa*, 574 N.W.2d 344, 347 (Iowa 1998) (holding the district court's original decision, a decision on appeal, and the district court's decision on remand is a "continuous judicial examination . . . in the same proceeding" for the purpose of evaluating whether jeopardy attaches to a criminal defendant).

**B.** **Notice of Date of Injury.** Larson next contends its right to due process was violated when the commissioner found a date of injury more than three years prior to the date alleged in Thorson's petition. A proper understanding of this issue is informed by a review of this court's decisions addressing the compensability of cumulative work-related injuries.

We adopted the cumulative injury rule in *McKeever Custom Cabinets v. Smith*, 379 N.W.2d 368 (Iowa 1985). By their very nature, cumulative injuries develop over time and eventually result in a compensable disability. *McKeever*, 379 N.W.2d at 373. Because such injuries develop gradually as a consequence of repetitive motion or overuse, the enterprise of determining the date when a cumulative injury "occurs" is typically a challenging task. Although it can be difficult to identify with precision, the date of cumulative injury is of critical importance in the determination of which of multiple employers and insurance carriers are "on the risk, whether notice of injury and claim were within the statutory period, whether statutory amendments were in effect, which wage basis applies, and many others." *Oscar Mayer v. Tasler*, 483 N.W.2d 824, 829 (Iowa 1992). In *McKeever*, we held a cumulative injury "occurs" for limitation purposes when, "because of pain or physical inability, [the employee] can no longer work." 379 N.W.2d at 374.

We revisited the analytical framework for identifying a claimant's date of cumulative injury in *Tasler*. 483 N.W.2d at 829. Tasler, who performed various jobs requiring repetitive motion in Oscar Mayer's packing plant, was repeatedly treated for neck, upper extremity, and back pain during the more than five years of her employment. *Id.* at 827. Despite her history of recurring medical treatment and multiple transfers to lighter-duty work stations during those years, Tasler apparently did not lose any time from work before the plant closed permanently on February 3, 1989. *Id.* at 828. Tasler subsequently filed five petitions seeking workers' compensation benefits for work-related injuries on four separate injury dates. *Id.* at 825–27. The agency found Tasler failed to prove she suffered a compensable injury on any one of the four dates alleged in her petitions, but nonetheless found she had sustained a "cumulative, repetitive, overuse type of injury" which caused an industrial disability of fifteen percent on the date the plant closed. *Id.* at 828. The employer sought judicial review of the agency's date-of-injury finding, contending the plant closing date could not have been the date of injury because Tasler's medical condition had not prevented her from working on or before that date. *Id.* The employer further asserted its right to due process was violated when the agency found an injury date that had not even been alleged by Tasler. *Id.*

In upholding the commissioner's finding of Tasler's injury date, we relied upon the "manifestation" rule, which defines the date of injury as the date on which a "disability manifests itself." *Id.* at 829 (citing 1B Arthur Larson, *Workers' Compensation Law* § 39.50 (1991)). We concluded an injury is manifest on " 'the date on which both the fact of the injury and the causal relationship of the injury to the claimant's employment would have become plainly apparent to a reasonable

person.' " *Id.* (quoting *Bellwood Nursing Home v. Indus. Comm'n*, 505 N.E.2d 1026, 1029 (Ill. 1987)). The commissioner's determination of the injury date "is entitled to a substantial amount of latitude" as it is an "inherently fact-based determination" derived from a multitude of factors. *Id.* We found substantial evidence supporting the selection of the plant closing date as Tasler's date of injury. *Id.* at 830.

We rejected Oscar Mayer's due process challenge to the commissioner's selection of an injury date that had not been alleged by Tasler. In disposing of the due process argument, we stated:

> due process requires that a party "be informed somehow of the issue involved in order to prevent surprise at the hearing and allow an opportunity to prepare. . . . The test is fundamental fairness, not whether the notice meets technical rules of common law pleading."

*Id.* at 828 (quoting *Wedergren v. Bd. of Dirs.*, 307 N.W.2d 12, 16 (Iowa 1981)). We concluded Oscar Mayer was sufficiently alerted to the cumulative nature of Tasler's claim because one of the five petitions attributed the claimed disability to a "gradual injury from skinning hams," while another alleged an injury arising from "repetitive use and strain of [the claimant's] back during [the] course of employment." *Id.* Under the circumstances, we concluded Oscar Mayer had failed to demonstrate prejudice. *Id.*

We again confronted an employer's claim of inadequate notice of an alleged cumulative injury in *University of Iowa Hospitals & Clinics v. Waters*, 674 N.W.2d 92 (Iowa 2004). Waters, who had been employed as a hospital custodian for nearly thirty years, filed two petitions for arbitration. *Waters*, 674 N.W.2d at 93. The first alleged he sustained a back injury on October 24, 1996 while pushing a loaded cart. *Id.* at 93–94. The second claimed another back injury occurred on June 16, 1997

as Waters was "lifting, carrying, and dumping heavy trash at work." *Id.* at 94. When uncertainty arose during Waters' deposition as to the date of injury, counsel disclosed his intention to amend the petition to allege the injury occurred on June 21, 1997, the last date Waters worked for the employer. *Id.* The commissioner found Waters sustained a cumulative back injury on his last day of work, and awarded permanent total disability benefits. *Id.* at 94–95. The district court reversed the agency's decision, concluding the employer was prejudiced by Waters' change of theory from claims of two separate traumatic injuries to a claim of cumulative injury on a date not alleged in the petitions. *Id.* at 95.

In *Waters,* we noted " '[a]n application for arbitration is not a formal pleading and is not to be judged by the technical rules of pleading.' " *Id.* at 96–97 (emphasis omitted) (quoting *Coghlan v. Quinn Wire & Iron Works,* 164 N.W.2d 848, 850 (Iowa 1969)). In further elucidating this principle, we stated:

> "The petition for arbitration may state the claims in general terms and technical or formal rules of procedure need not be observed. The key to pleading in an administrative process is nothing more than opportunity to prepare and defend. The employer is to be afforded a substantive right to be at least generally informed as to the basic material facts upon which the employee relies as a basis for compensation."

*Id.* at 97 (quoting James R. Lawyer and Judith Ann Graves Higgs, *Iowa Workers' Compensation–Law & Practice* § 21-7, at 231 (3d ed. 1999) (footnotes and internal quotations omitted)). We found this standard of notice was met by Waters' "vague use of three gerunds ("lifting, carrying, and dumping") [which] implie[d] his injury resulted from repetitive work-related behavior." *Id.* at 98. In determining the adequacy of the notice of Waters' claimed date of injury, we noted discovery should have informed

the employer of the cumulative nature of the injury, particularly in light of testimony asserting Waters requested a change of his work responsibilities in order to avoid the exertional activities thought to be exacerbating his low-back symptoms. *Id.* "Although a history of back problems does not always necessitate a cumulative injury finding . . . , such a history should alert an employer to the possibility of a cumulative injury claim." *Id.*

With the principles established in *McKeever*, *Tasler* and *Waters* in mind, we now consider whether Larson's right to due process was infringed by the agency's finding that Thorson suffered a cumulative injury on April 26, 1996. We first note Thorson's petition undercuts Larson's argument that it was unaware of the possibility of an injury prior to July 20, 1999. Thorson expressly alleged her injury occurred "cumulatively, gradually, and progressively," and caused her to be disabled at "various times [from] 1993–1999." Larson had a due process right to be "sufficiently apprised of the possibility that the cumulative injury doctrine *might be* relied upon." *Tasler*, 483 N.W.2d at 828 (emphasis added). Thorson's petition provided ample notice by expressly apprising Larson of a claim that Thorson's injury arose cumulatively and produced disability at times before 1999. Furthermore, Larson had actual notice of the long progression of Thorson's developing chronic pain symptoms as a consequence of: (1) the enduring employer-employee relationship during which Thorson was assigned to light duty because of her ongoing physical symptoms; (2) Thorson's petition alleging disability at various times from 1993 to 1999; and, (3) the employer's access to Thorson's medical records generated in the course of treatment of those symptoms long before July 20, 1999. On this record, we find no merit in Larson's due process challenge.

**C.   Statute of Limitations.**   As Thorson had not been paid disability benefits for the claimed cumulative injury before the petition was filed, the pertinent statute of limitations for her claim is "two years from the date of the occurrence of the injury for which benefits are claimed. . . ."  Iowa Code § 85.26(1).  Consistent with this court's prior decisions, Thorson is entitled to the benefit of the discovery rule, *Herrera v. IBP, Inc.*, 633 N.W.2d 284, 287 (Iowa 2001), and the statute of limitations did not begin to run until she recognized, or should have recognized, the " 'nature, seriousness and probable compensable character' " of the disability.  *Orr v. Lewis Cent. Sch. Dist.*, 298 N.W.2d 256, 257 (Iowa 1980) (citation omitted); *accord Herrera*, 633 N.W.2d at 287.  Thorson's knowledge of these three triggering factors may be actual or imputed from the record.  *Ranney v. Parawax Co.*, 582 N.W.2d 152, 154–55 (Iowa 1998).

The commissioner found Thorson's cumulative injury became manifest on April 26, 1996 because by that date she knew she had a chronic pain condition that was causally connected to her work activities.  Larson contends the petition filed on July 23, 1999 was therefore untimely because it was filed more than two years after the injury date.  We disagree.  The statute of limitations does not necessarily begin to run on the date the injury becomes manifest.  *Herrera*, 633 N.W.2d at 288.  In *Herrera*, we noted the discovery rule may cause the date of a cumulative injury's manifestation to diverge from the date when the limitation period begins to run:

> [A] cumulative injury is manifested when the claimant, as a reasonable person, would plainly be aware (1) that he or she suffers from a condition or injury, and (2) that this condition or injury was caused by the claimant's employment.  Upon the occurrence of these two circumstances, the injury is deemed to have occurred.  Nonetheless, by virtue of the

> discovery rule, the statute of limitations will not begin to run until the employee knows that the physical condition is serious enough to have a permanent adverse impact on the claimant's employment or employability, i.e., the claimant knows or should know the 'nature, seriousness, and probable compensable character' of his injury or condition.

*Id.* (citing *Orr*, 298 N.W.2d at 257).

Larson contends the court modified the *Herrera* formulation of the discovery rule in *Chapa*, 652 N.W.2d at 189. In *Chapa*, we restated the rule announced in *Herrera* that the statute of limitations in a cumulative injury case "does not begin to run until the worker recognizes, or should recognize, the 'nature, seriousness and probable compensable character' of the disability." 652 N.W.2d at 189 (quoting *Orr*, 298 N.W.2d at 257). We failed, however, in *Chapa* to quote language from *Herrera* which clearly communicated that a claimant is deemed to know the nature, seriousness and probable compensable character of an injury when she knows her physical condition is serious enough to have a permanent adverse impact on her employment or employability. *See Herrera*, 633 N.W.2d at 288.

Larson asserts our omission in *Chapa* of the "permanent adverse impact" language from *Herrera* is tantamount to a repudiation of the proposition that the limitations period does not begin to run until the claimant has knowledge of an injury's permanent impact on her employment. Our failure to repeat verbatim language from *Herrera* in *Chapa* should not be so understood. Indeed, we cited *Herrera* in *Chapa*, and gave no indication of a retreat from the earlier formulation of the discovery rule as it is applied in cumulative injury and other workers' compensation cases. *Chapa*, 652 N.W.2d at 189–90. We now clarify that our "shorthand" expression of the discovery rule in *Chapa* did not signal the court's intent to reformulate the rule.

In his remand proceeding, the commissioner found Thorson was not aware of the nature, seriousness and probable compensable character of her injury before she filed her petitions on July 28, 1999. Larson challenges this finding, emphasizing Thorson experienced, and sought medical treatment for, pain in her neck, upper extremities, and back long before that date. Although the record could support a finding of an earlier discovery date, the finding made by the commissioner is supported by substantial evidence in the record. Although Thorson claimed she was unable to take advantage of some overtime hours because of her chronic pain condition, she had not lost any regular hours of work and she was still working full-time with some overtime hours when she filed her petitions on July 28, 1999. Although light duty had been ordered by a medical provider, Thorson had been given neither permanent work restrictions nor a permanent physical impairment rating before that date. Thus, we affirm the agency's determination that Thorson's claims were timely under the discovery rule.

**D.    Industrial Disability.**  On the subject of Thorson's claimed industrial loss, the commissioner's remand decision stated:

> The claimant is still employed at her old job. She has not suffered a loss of earnings as a result of work injury, *other than lost overtime*. She continues to suffer with pain in her neck and shoulder blades, muscle spasms in her shoulders, and pain in both elbows, especially when lifting, pulling, grasping, doing overhead work, reaching out, pushing or grasping, or pulling. She has no permanent work restrictions, however. She has a rating of permanent partial impairment of five percent of the body as a whole from her chronic pain syndrome from Dr. Ban, and three percent of the body as a whole from Dr. Kuhnlein. Dr. Carlson rated her impairment as zero percent, as did Dr. Bahls.
>
> As a result of the work injury, there are many personal activities she can no longer perform. She was 44 years old at the time of the hearing; she is 48 now. Her work

experience is limited to manual labor, virtually all for one employer. She has only a high school diploma.

Her ratings of impairment are low; she has no restrictions; she is still working at her old job and has not lost earnings *other than lost overtime.* Based on these and all appropriate factors of industrial disability, it is found that as a result of her work injury of April 26, 1996, the claimant has an industrial disability of 25 percent.

(Emphasis added.) Larson challenges the sufficiency of the evidence supporting the commissioner's findings that Thorson (1) lost overtime wages as a consequence of her injury, and (2) sustained a twenty-five percent industrial disability.

1. *Lost overtime wages.* Thorson testified that although voluntary overtime work was available to Larson's employees, she did not take it (or took less than was available to her) on occasion during the year before the arbitration hearing because of her work restrictions, or because she felt unable to work the additional hours. We conclude this testimony was minimally sufficient to constitute substantial evidence supporting the commissioner's finding that Thorson lost some overtime earnings as a consequence of the cumulative injury.

Although we have concluded the quantum of proof supporting the finding of a loss of overtime earnings is minimally sufficient to sustain it, our conclusion that no reversible error resulted from the commissioner's consideration of that loss as a factor in the determination of industrial disability rests upon an additional ground. On judicial review we may grant relief to a party based on a finding of fact not supported by substantial evidence only when the agency's action was "based upon" that determination of fact. Iowa Code § 17A.19(10) ("The court shall reverse, modify, or grant other appropriate relief from agency action . . . if it determines that substantial rights of the person seeking judicial relief have been prejudiced because the agency action is . . . . (*f*) Based upon a

determination of fact . . . that is not supported by substantial evidence in the record when that record is viewed as a whole.").

We conclude Larson has failed to demonstrate the commissioner's determination of Thorson's industrial disability was based upon the finding that Thorson sustained claimed loss of overtime earnings. When viewed in the full context of the remand decision, we believe the commissioner's passing references to Thorson's claim of "lost overtime" were calculated primarily to acknowledge the cumulative injury did *not* cause a significant loss of earnings, a fact that tends to mitigate rather than increase industrial disability. Industrial disability is, of course, a measure of one's loss of *earning capacity* in the competitive labor market. *Acuity Ins. v. Foreman*, 684 N.W.2d 212, 220 (Iowa 2004); *Excel Corp. v. Smithart*, 654 N.W.2d 891, 901 (Iowa 2002). Proof of an actual reduction in the claimant's earnings is not essential to establish a loss of earning capacity. *St. Luke's Hosp.*, 604 N.W.2d at 653. As Larson has not shown the commissioner's finding of a twenty-five percent industrial disability was substantially "based on" Thorson's claimed loss of an undetermined amount of overtime earnings, we conclude Larson's substantial rights were not prejudiced by the references to such evidence in the remand decision.

2. *Industrial disability rating.* We now turn to Larson's claim that the commissioner erred in awarding Thorson benefits for a twenty-five percent industrial disability. This issue is a mixed question of law and fact, as the determination of industrial disability required the commissioner to apply established law (the factors considered in determining whether an industrial disability occurred) to the facts. As Larson's challenge to the agency's industrial disability determination is a challenge to the agency's application of law to the facts, we review this

issue under the "irrational, illogical, or wholly unjustifiable" standard. *Meyer v. IBP, Inc.*, 710 N.W.2d 213, 218–19 (Iowa 2006).

Larson contends the commissioner's finding that Thorson suffered a twenty-five percent loss of earning capacity as a result of the injury was irrational, illogical, or wholly unjustifiable because "she has no restrictions, is working overtime, is working a second job, and earning more now than she ever earned." While the evidence highlighted by Larson was certainly relevant to the commissioner's determination of industrial disability, and was in fact considered by the commissioner, it is not dispositive of the issue. An assessment of industrial disability implicates " 'all the factors that bear on [the claimant's] *actual employability.*' " *Thilges v. Snap-On Tools Corp.*, 528 N.W.2d 614, 616 (Iowa 1995) (quoting *Guyton v. Irving Jensen Co.*, 373 N.W.2d 101, 104 (Iowa 1985)) (emphasis added). These factors include the claimant's "age, education, qualification, experience, and inability due to injury to engage in the employment for which the claimant is fitted." *Id.* (citing *Doerfer Div. of CCA v. Nicol*, 359 N.W.2d 428, 438 (Iowa 1984)). And as we have already noted, the fact that Thorson "was able to continue at h[er] job does not prove, as a matter of law, that [s]he has suffered no loss of earning capacity." *Second Injury Fund v. Hodgins*, 461 N.W.2d 454, 456 (Iowa 1990).

In arriving at the industrial disability determination of twenty-five percent, the commissioner considered Thorson's modest functional impairment, as assessed by Dr. Ban and Dr. Kuhnlein, as well as the other relevant factors including Thorson's age, educational background, qualifications for employment, work experience, motivation, loss of earnings, severity and situs of the injury, and history of work (light duty) restrictions. Although factors emphasized by Larson (absence of

permanent work restrictions, continued full-time work including some overtime, and a history of increased actual earnings after the date of cumulative injury) certainly mitigated the extent of industrial disability in this case, other substantial evidence in the record supported the determination made by the agency in this case. Thorson's age, her work experience limited to manual labor, her educational background, and the nature of her chronic pain condition are factors supporting the agency's industrial disability determination. In short, we cannot say the commissioner's resolution of this issue on remand was irrational, illogical, or wholly unjustifiable, and we affirm on this issue.

**E. Temporary Partial Disability Benefits.** When it is "medically indicated that an employee is not capable of returning to employment substantially similar to the employment in which the employee was engaged at the time of injury, but is able to perform other work consistent with the employee's disability," a claim for temporary partial disability benefits may be made. Iowa Code § 85.33(2). Such benefits are intended to compensate an injured employee for a "temporary partial reduction in earning ability as a result of the employee's temporary partial disability." *Id.* The amount of temporary partial disability benefits owed by the employer is equal to "sixty-six and two-thirds percent of the difference between the employee's weekly earnings at the time of injury, computed in compliance with section 85.36, and the employee's actual gross weekly income from employment during the period of temporary partial disability." *Id.* § 85.33(4).

Larson raises two challenges to the agency's award of temporary partial disability benefits in this case. First, Larson contends the law does not authorize an award of such benefits for periods before Thorson's cumulative injury became manifest on April 26, 1996. Second, Larson

claims in the alternative that even if the law does authorize an award of permanent partial disability benefits to compensate a claimant for a diminution of earnings sustained prior to the manifestation date, the commissioner erred in awarding such benefits in this case because Thorson failed as a matter of law to meet her burden to prove the cumulative injury caused a decrease in her earnings sufficient to sustain the award.  We address these arguments in turn.

1.  *TPD benefits prior to date of manifestation.*  Iowa Code section 85.33 provides, in relevant part:

2.  "Temporary partial disability" or "temporarily, partially disabled" means the condition of an employee for whom it is medically indicated that the employee is not capable of returning to employment substantially similar to the employment in which the employee was engaged at the time of injury, but is able to perform other work consistent with the employee's disability. "Temporary partial benefits" means benefits payable, in lieu of temporary total disability and healing period benefits, to an employee because of the employee's temporary partial reduction in earning ability as a result of the employee's temporary partial disability. Temporary partial benefits shall not be considered benefits payable to an employee, upon termination of temporary partial or temporary total disability, the healing period, or permanent partial disability, because the employee is not able to secure work paying weekly earnings equal to the employee's weekly earnings at the time of injury.

3.  If an employee is temporarily, partially disabled and the employer for whom the employee was working at the time of injury offers to the employee suitable work consistent with the employee's disability the employee shall accept the suitable work, and be compensated with temporary partial benefits. If the employee refuses to accept the suitable work with the same employer, the employee shall not be compensated with temporary partial, temporary total, or healing period benefits during the period of the refusal. If suitable work is not offered by the employer for whom the employee was working at the time of the injury and the employee who is temporarily partially disabled elects to perform

work with a different employer, the employee shall be compensated with temporary partial benefits.

Iowa Code § 85.33(2)–(3).

Iowa Code section 85.32 provides that "except for injuries resulting in permanent partial disability, compensation shall begin on the fourth day of disability *after the injury*." (Emphasis added.)[10] Larson contends the agency erred in its remand decision by awarding temporary partial disability benefits for periods prior to April 26, 1996, and extending as far back as 1992. As this argument challenges the agency's interpretation of a provision of law, a function not clearly vested in the agency, *Mycogen Seeds*, 686 N.W.2d at 464, we are not constrained by deference to the agency's decision on this issue. Iowa Code § 17A.19(10)(*c*).

When called upon to interpret a statute, we first determine whether the legislative enactment is ambiguous. If it is clear and unambiguous, "we give [the] statute a plain and rational meaning." *In re T.S.*, 705 N.W.2d 498, 502 (Iowa 2005) (citing *ABC Disposal Sys., Inc. v. Dep't of Natural Res.*, 681 N.W.2d 596, 603 (Iowa 2004)). If, on the other hand, the statute is ambiguous, we rely on well-established rules to aid our interpretation. *Waukee v. City Dev. Bd.*, 590 N.W.2d 712, 717 (Iowa 1999). A statute or rule "is ambiguous if reasonable minds could differ or be uncertain as to the meaning of the statute." *Carolan v. Hill*, 553 N.W.2d 882, 887 (Iowa 1996).

"Ambiguity may arise in two ways: (1) from the meaning of particular words; or (2) from the general scope and meaning of a statute when all its provisions are examined." *Id.* (citation omitted). We conclude the phrase "after the injury" in section 85.32 is ambiguous

---

[10]If the period of incapacity extends beyond the fourteenth day following the date of injury, the claimant's compensation for the third week of disability includes an additional amount equal to three days of compensation. *See* Iowa Code § 85.32.

when applied to cumulative injuries which develop gradually and progressively rather than suddenly, traumatically, or discretely. Reasonable minds could differ or be uncertain as to whether the phrase "after the injury" in a cumulative injury case means a temporary partial disability can be compensable only if it arises after the manifestation date, or whether it can be compensable even if it arises before the manifestation date as a consequence of a cumulative injury process which subsequently progresses to the point of manifestation.

The ambiguity within the statute is made apparent in the arguments advanced in this case by Larson and Thorson. Larson contends it can have no liability to Thorson for workers' compensation benefits until after April 26, 1996, the manifestation date found by the commissioner. Thorson advances a much different interpretation of the phrase "after the injury" in section 85.32. She notes cumulative injuries develop gradually and progressively, and employees who suffer them will have periods of temporary, but progressively more profound, restriction or dysfunction until the injury becomes so disruptive as to satisfy the manifestation standard. As the deterioration of their functioning advances toward manifestation, employees who experience cumulative trauma may require medical treatment, modifications of their work activities, and adjustments of their work schedules in order to continue their employment. Such employees may continue to work, as Thorson did, but experience temporary reductions of their earnings and require medical treatment long before their cumulative injuries are "manifest" under the standard established in our prior decisions. Furthermore, Thorson posits the legislature's use of the phrase "after the injury" rather than "after the date of injury" or "after the date of manifestation of the injury" leaves room for the likelihood that the drafters intended to

provide a remedy for temporary partial disability, if any, that occurs prior to the date of manifestation.

We interpret the phrase "after the injury" in section 85.32 to permit an award of temporary partial disability benefits upon proof of a diminution of a claimant's earnings during periods of temporary incapacity caused by a work-related condition which later manifests as a cumulative injury. Our resolution of this issue is faithful to the well-established rule that chapter 85 is liberally construed in favor of the employee, with any doubt in its construction being resolved in the employee's favor. *Teel v. McCord,* 394 N.W.2d 405, 406–07 (Iowa 1986). Invocation of this rule is appropriate under the circumstances presented here because we do not believe the General Assembly intended to deny a remedy under chapter 85 to employees who suffer a temporary reduction of earnings before a work-related cumulative injury progresses to the point of "manifestation" as we have defined it in our cases. We therefore affirm the commissioner's interpretation of section 85.32 as authorizing an award of temporary partial disability benefits for periods prior to the date of manifestation upon proof that a claimant's earnings were diminished temporarily as a result of a work-related cumulative injury process.

2. *Thorson's proof of the TPD claim.* Having concluded an award for temporary partial disability benefits may, upon proper proof, be established for periods prior to the date of a cumulative injury's manifestation, we next address whether the record in this case contains substantial evidence supporting the commissioner's award in this case. Larson contends the award is not supported in the record because, although Thorson testified she lost an unquantified amount of overtime wages in the year before the arbitration hearing held on November 21,

2000, she supplied no proof that the diminution of earnings claimed for the earlier relevant periods (prior to November 21, 1999) were caused by the work-related cumulative injury.[11] Noting that some of Thorson's claimed periods of temporary partial disability included holidays or vacations, Larson contends substantial evidence in the record does not support a finding that any diminution of overtime earnings was caused by the claimed cumulative injury.

Thorson contends her proof of a causal connection between the claimed diminution of her earnings (a loss of overtime hours and related pay) and the cumulative injury is adequate in this case. First, she emphasizes that she worked under a medical restriction for light duty during the weeks for which she seeks temporary partial disability benefits. Second, Thorson relies on the medical records evidencing her long history of chronic pain symptoms, and her testimony establishing that she "turned down voluntary overtime" during the year prior to the arbitration hearing when she "didn't think [she] could work past 3:30."

In the alternative, Thorson points out section 85.33 does not expressly require proof of a causal connection between her cumulative injury and the diminution of her earnings, and she asserts an award of temporary partial disability benefits may be supported by mere proof of a diminution of her earnings during weeks she worked under a light-duty restriction from her treating physician. In furtherance of her position on this point, Thorson notes section 85.33 provides a formula for calculating permanent partial disability benefits, but gives no indication that proof of a causal connection between a work-related cumulative injury and a reduction in earnings is required.

---

[11]Only one of the periods for which Thorson was awarded temporary partial disability benefits (January 8, 2000 to January 11, 2000) was within the year before the arbitration hearing.

Although we reject Thorson's contention that she had no burden to produce evidence of a causal connection between the cumulative injury and the claimed diminution of earnings during the relevant weeks to support an award of temporary partial disability benefits under section 85.33, we conclude she did produce substantial evidence of a causal connection in this case. Thorson worked under a physician-imposed light-duty restriction during the relevant weeks, and the medical records clearly evidence she was suffering from chronic pain in multiple parts of her body throughout that time. This evidence is minimally sufficient to support a causal nexus between Thorson's cumulative injury and the claimed diminution of her earnings for the relevant weeks. Although Larson contends on appeal that Thorson might have worked less during some of those weeks not because of an injury, but because holidays, funerals, or vacations reduced her availability for work, the weight to be given such evidence was a matter for the commissioner to decide. We therefore affirm on this issue.

**F. Medical Benefits Prior to Date of Manifestation.** Similar to its challenge to the agency's award of TPD benefits prior to the date of manifestation, Larson challenges the deputy commissioner's award of medical benefits prior to the date of manifestation. The medical benefits statute, Iowa Code section 85.27(1), requires the employer to pay medical and transportation expenses "for all injuries compensable under this chapter." Interpretation of section 85.27(1) has not clearly been vested in the discretion of the workers' compensation commissioner, and we therefore owe no deference to the agency's interpretation. Iowa Code § 17A.19(10)(*c*).

The plain language of section 85.27(1) requires the employer to pay for all medical costs incurred as a result of an injury compensable under

chapter 85. Section 85.27(1) does not expressly limit the employer's liability for medical costs to costs incurred following manifestation of a compensable workers' compensation claim. The only statutory requirement for compensability is that the treatment be "for" an injury compensable under the chapter. Work-related cumulative injuries are, of course, compensable under chapter 85, and consequently section 85.27(1) requires the employer to compensate the employee for reasonable medical costs incurred as a result of such injuries.

We find no language in the statute suggesting that an employer is without obligation to provide reasonable medical treatment for work-related health problems in advance of the date of manifestation of a cumulative injury. We conclude the agency did not err in construing section 85.27(1) to require Larson to pay for medical treatment for Thorson's work-related condition that later manifested as a cumulative injury.

**G.    Reimbursement for Multiple IMEs.**    Iowa Code section 85.39 provides, in relevant part, as follows:

> If an evaluation of permanent disability has been made by a physician retained by the employer and the employee believes this evaluation to be too low, the employee shall, upon application to the commissioner and upon delivery of a copy of the application to the employer and its insurance carrier, be reimbursed by the employer the reasonable fee for *a subsequent examination* by a physician of the employee's own choice, and reasonable necessary transportation expenses incurred for the examination.

Iowa Code § 85.39 (emphasis added). Larson was ordered to pay for Dr. Ban's October 2000 examination under this statute. Having paid for the prior examination, Larson contends the plain language of section 85.39 precludes its liability for the subsequent examination by Dr. Kuhnlein. We agree, and therefore reverse that part of the

commissioner's remand decision ordering Larson to pay for the Kuhnlein examination.[12]

## V.    Conclusion.

We affirm all aspects of the commissioner's remand decision except for the order directing Larson to pay the cost of the Kuhnlein examination pursuant to section 85.39.

**AFFIRMED IN PART AND REVERSED IN PART.**

All justices concur except Wiggins and Baker, JJ., who take no part.

---

[12]We acknowledge the unusual circumstances which Thorson faced on remand in this case.  Dr. Ban, who had provided Thorson's only permanent impairment rating prior to the November 2000 arbitration hearing, was not available to update his report. Although Larson presented two new medical opinions for the commissioner's consideration in the course of the remand proceeding, and Thorson had a strong interest in responding to this new evidence, the plain language of section 85.39 does not authorize the commissioner to require Larson to pay for a second examination in this case.  *Cf. State v. Kidd*, 562 N.W.2d 764, 765 (Iowa 1997) (stating the word "an" as used in a criminal statute prohibiting unauthorized possession of "an offensive weapon" denotes a singular unit of prosecution).  It is the legislature's role to determine if claimants should be entitled to more than one examination at the employer's expense under the statute.