# IN THE COURT OF APPEALS OF IOWA

No. 22-0471
Filed February 22, 2023

**MIDAMERICAN CONSTRUCTION LLC and GRINNELL MUTUAL,**
    Petitioners-Appellants,

**vs.**

**MARSHALL SANDLIN,**
    Respondent-Appellee.

_____

Appeal from the Iowa District Court for Polk County, Scott D. Rosenberg,
Judge.

An employer and insurance carrier appeal a decision issued by the workers'
compensation commissioner. **AFFIRMED IN PART, REVERSED IN PART, AND
REMANDED.**

Stephen W. Spencer and Christopher S. Spencer of Peddicord Wharton,
LLP, West Des Moines, for appellants.

Zeke R. McCartney of Reynolds & Kenline, L.L.P., Dubuque, for appellee.

Considered by Vaitheswaran, P.J., and Greer and Schumacher, JJ.

**SCHUMACHER, Judge.**

MidAmerican Construction LLC and their workers' compensation insurance carrier, Grinnell Mutual, (collectively, the defendants), appeal the district court's judicial review decision upholding the workers' compensation commissioner's decision. They contend the claimant, Marshall Sandlin, is not entitled to reimbursement for an independent medical examination (IME). The defendants also claim that if Sandlin is entitled to such reimbursement, the amount awarded is unreasonable. We affirm in part, reverse in part, and remand.

**I.      Background Facts & Proceedings**

Sandlin suffered a workplace injury on September 6, 2017, after he fell off a ladder and injured his foot. His employer initially told him to rest for a couple of days. Sandlin, on his own initiative, went to Medical Associates for treatment the following Saturday. He testified he chose that location because it was the only clinic open on Saturdays, he had previously been treated by doctors there, and he considered them to be his primary doctors. Sandlin saw Dr. Frederick Isaak who, after conducting an x-ray, suspected Sandlin had fractured one of his toes. Dr. Isaak referred Sandlin to Dr. Tracy Hughes, a podiatrist, on September 13. Sandlin continued under the care of Dr. Hughes until it was determined that the fracture was healing and Sandlin could largely return to his normal activities.

Sandlin was examined by Dr. Erin Kennedy on December 14, 2017, to determine whether Sandlin had achieved maximum medical improvement (MMI) and whether he had a permanent impairment. The parties contest as to how the appointment with Dr. Kennedy was set. The defendants contend that Sandlin was referred to Dr. Kennedy by Dr. Hughes, thereby continuing the chain of doctors

Sandlin had chosen himself. Sandlin claims the medical case manager (MCM) set the appointment and he was directed by the insurer to attend. In any event, Dr. Kennedy determined Sandlin had reached maximum medical improvement and had not sustained a permanent impairment. Dr. Kennedy's fee was $174.25

Sandlin saw Dr. Taylor on June 19, 2018, for an IME. He assigned Sandlin a two percent permanent impairment rating for his left foot. Dr. Taylor's fee was $2020.00. The defendants advised that they would not pay the two percent rating and they would not be paying the full cost of Dr. Taylor's examination.

The case was heard by a deputy workers' compensation commissioner. The decision, issued June 18, 2020, found Sandlin suffered a two percent impairment to his left leg. Sandlin was also determined to be entitled to reimbursement for the IME that Dr. Taylor performed. The defendants filed a motion for rehearing, suggesting the impairment was to Sandlin's foot, not his leg, and that the IME costs should be denied. The deputy granted the motion as to the location of the injury, but denied the defendants' motion as to the IME.

The defendants appealed the decision to the commissioner, who affirmed the deputy's decision on all grounds. The defendants then petitioned for judicial review, arguing Sandlin was not entitled to reimbursement for the IME, and if he was, the amount was unreasonable. The district court denied the petition and affirmed the commissioner's ruling. The defendants now appeal.

## II.     Standard of Review

Review of workers' compensation cases is governed by Iowa Code chapter 17A (2018). *Larson Mfg. Co. v. Thorson*, 763 N.W.2d 842, 850 (Iowa 2009). Because the interpretation of statutes has not been vested in the agency, "[w]e do

not defer to the commissioner's interpretation of the law." *Id.* Thus, our review is for correction of errors at law. *Wilson v. IBP, Inc.*, 589 N.W.2d 729, 730 (Iowa 1999).

We review factual determinations made by the commissioner for substantial evidence. *Thorson*, 763 N.W.2d at 850. Evidence is considered substantial when, "the quantity and quality of evidence that would be deemed sufficient by a neutral, detached, and reasonable person, to establish the fact at issue when the consequences resulting from the establishment of that fact are understood to be serious and of great importance." *Id.* (quoting Iowa Code § 17A.19(10)(f)(1)).

We will only reverse the commissioner's application of law to facts if it was "irrational, illogical, or wholly unjustifiable." *Id.* (quoting Iowa Code §17A.19(10)(*l*)). "This standard requires us to allocate some deference to the commissioner's determination, but less than we give to the agency's findings of fact." *Id.*

## III.     Is Sandlin Entitled to Reimbursement for the IME?

The defendants contend Sandlin does not qualify for reimbursement for the IME Dr. Taylor performed. In particular, they point to Iowa Code section 85.39(2):

> If an evaluation of permanent disability has been made by a physician retained by the employer and the employee believes this evaluation to be too low, the employee shall, upon application to the commissioner and upon delivery of a copy of the application to the employer and its insurance carrier, be reimbursed by the employer the reasonable fee for a subsequent examination by a physician of the employee's own choice, and reasonably necessary transportation expenses incurred for the examination.

Thus, the code restricts a claimant's opportunity to be reimbursed for a medical examination. A prerequisite to such reimbursement is an evaluation by a physician "retained by the employer." The defendants claim they did not retain Dr. Kennedy.

In considering what "retained" means, our supreme court held,

> We conclude that when the statute is considered in its entirety, it is apparent that the legislature intended to balance the competing interests of the employee and employer with respect to the *choice* of doctor. We think, therefore, that the legislature meant to allow the employee to obtain a disability rating from a physician of his "own choice" when the physician *chosen by* the employer gives a disability evaluation unsatisfactory to the employee.

*IBP, Inc. v. Harker*, 633 N.W.2d 322, 327 (Iowa 2001). Thus, our inquiry is a fact question: Who chose to have Dr. Kennedy conduct the examination?

We find substantial evidence supports the commissioner's determination that the employer and insurer, via the medical case manager, chose Dr. Kennedy to perform the examination. In particular, records indicated:

> 11-15-2017 – MCM maintained contact with Ms. Miller at Grinnell Mutual to clarify/confirm case goals and activities. MCM contacted the medical provider with a request to address MMI/disability as indicated within the client's final office visit notes. Dr. Hughes, podiatrist, indicated she does not address MMI/disability related to workers' compensation claims. Medical Associates staff *recommended* MCM to contact Occupation Medicine and *inquire* if Dr. Erin Kennedy would address MMI/disability. Dr. Kennedy requested Mr. Sandlin schedule a 30 minute consultation to address MMI. *MCM secured an appointed* per the physician's request after 12/09/2017 for Mr. Sandlin.

(emphasis added). The medical care manager was explicit:

> MCM secured a consultation for Mr. Sandlin with Dr. Erin Kennedy to address MMI and assess for disability related to his work injury.

These records are confirmed by Sandlin's testimony, which demonstrated that he was directed to see Dr. Kennedy by the insurance provider.

Some evidence suggests Sandlin was referred to Dr. Kennedy directly by Dr. Hughes. For instance, Dr. Kennedy informed defendants' counsel via email that Dr. Hughes requested she perform the impairment rating. And Dr. Hughes

informed defendants' counsel that she normally refers patients to Occupational Medicine for impairment ratings. But "when we review factual questions delegated by the legislature to the commissioner, the question before us is not whether the evidence supports different findings than those made by the commissioner, but whether the evidence 'supports the findings actually made.'" *Thorson*, 763 N.W.2d at 850 (citation omitted). Because there is substantial evidence to support the commissioner's findings, we affirm.

## IV. Was the Reimbursement Amount Reasonable?

The defendants contend the commissioner's order requires them to reimburse an unreasonable amount for Sandlin's examination. Iowa Code section 85.39(2) requires employers to reimburse "the reasonable fee for a subsequent examination by a physician of the employee's own choice." We highlight that statutory amendments passed in 2017 now place two limits on such reimbursement: (1) the employer need not reimburse the employee if the injury is not compensable and (2) the "determination of the reasonableness of a fee for an examination made pursuant to this subsection, shall be based on the typical fee charged by a medical provider to perform an impairment rating in the local area where the examination occurred." Iowa Code § 85.39(2). The defendants argue Dr. Taylor's examination went beyond what was required to perform an impairment rating. As a result, they argue that only a fraction of Dr. Taylor's fee is reimbursable.

We begin with the applicable statute with the added 2017 language italicized below:

> If an evaluation of permanent disability has been made by a physician retained by the employer and the employee believes this evaluation to be too low, the employee shall, upon application to the commissioner and upon delivery of a copy of the application to the employer and its insurance carrier, be reimbursed by the employer the reasonable fee for a subsequent examination by a physician of the employee's own choice, and reasonably necessary transportation expenses incurred for the examination. The physician chosen by the employee has the right to confer with and obtain from the employer-retained physician sufficient history of the injury to make a proper examination. *An employer is only liable to reimburse an employee for the cost of an examination conducted pursuant to this subsection if the injury for which the employee is being examined is determined to be compensable under this chapter or chapter 85A or 85B. An employer is not liable for the cost of such an examination if the injury for which the employee is being examined is determined not to be a compensable injury. A determination of the reasonableness of a fee for an examination made pursuant to this subsection, shall be based on the typical fee charged by a medical provider to perform an impairment rating in the local area where the examination is conducted.*

*See* 2017 Iowa Acts ch. 23, § 24 (now codified at Iowa Code § 85.39(2)) (emphasis added).

The district court, agreeing with the agency, found Dr. Taylor's fees were reasonable. Yet, under his "Examination Fee" schedule, Dr. Taylor broke out his charges: (1) "Independent Medical Exam: $1400 Base Fee (Physician time billed at $95 per 15-minute increment)" and (2) "Impairment Rating/Restrictions Exam: $500 Flat Fee (Includes cost: for one body part. Additional $150 per [additional] body part)." We determine the impairment rating fee of $500.00 is the reasonable fee authorized by the statute, as amended.

When interpreting statutes, we look to the intent of the legislature based on the words used and what interpretation will best effect the purpose of the statute. *Harker*, 633 N.W.2d at 325. It is well established that "[w]e liberally construe workers' compensation statutes in favor of the worker." *Ewing v. Allied Constr.*

*Servs.*, 592 N.W.2d 689, 691 (Iowa 1999). "In reviewing the commissioner's interpretation of the statutes governing the agency, we defer to the expertise of the agency, but reserve for ourselves the final interpretation of the law." *Second Inj. Fund v. Bergeson,* 526 N.W.2d 543, 546 (Iowa 1995). We review questions over the proper interpretation of the workers' compensation statute for correction of errors at law when "the legislature did not clearly vest the agency with interpretative authority." *Ramirez-Trujillo v. Quality Egg, L.L.C.*, 878 N.W.2d 759, 768 (Iowa 2016).

We examine the words added to Iowa Code section 85.39(2) in 2017 and assume the legislature added that language for a reason. Before the 2017 amendment, the statute required that only a reasonable fee for an "examination" be approved, but after the 2017 amendment, the language was enhanced with the terms: "A determination of the reasonableness of a fee for an examination made pursuant to this subsection, shall be based on the typical fee charged by a medical provider to perform an *impairment rating* in the local area where the examination is conducted." Iowa Code § 85.39(2) (emphasis added). And Sandlin has the burden of proving the reasonableness of the expenses incurred for the *impairment* examination. *See* Iowa R. App. P. 6.904(3)(e) ("Ordinarily, the burden of proof on an issue is upon the party who would suffer loss if the issue were not established."). From the record, in the "local area," Dr. Taylor charges separately for preparing an IME and for preparing an impairment rating. But the statute as now written only allows for reimbursement of an examination based on the typical fee charged for

an impairment rating, not the extent of information a full IME entails.[1]  Thus, giving effect to the words of the statute, we award the "typical fee charged by the medical provider to perform an impairment rating."  To do otherwise would authorize payment for an expanded examination, report, and intensive review of medical records, in contravention of what the legislature has determined.  We reverse the reimbursement award of $2020.00 and remand for the entry of a reimbursement award based on the impairment rating fee, which on this record is $500.00.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

---

[1] Granted, our cases have generally discussed the examination under section 85.39 as an "IME."  That form of examination is a "process . . . known as an IME because the examination is independent of the examination done by the physician selected by the employer."  *Des Moines Area Reg'l Transit Auth. v. Young*, 867 N.W.2d 839, 843–44 (Iowa 2015).  But as the IME has evolved in the actual practice, the IME report includes extensive analysis of the medical history, a determination of causation, and the determination of an impairment rating, if disability is found.  Often the "report" is used for purposes of evidence for the hearing.  Prior to 2017, section 85.39 addressed only an "examination" and not the payment for a report.  *See id.* at 845–46.  After the 2017 amendment, payment for the examination referred to in section 85.39 is limited based on the typical cost to perform an impairment rating.