# IN THE COURT OF APPEALS OF IOWA

No. 20-0673
Filed April 14, 2021

**APRIL ARLENE CLARK,**
      Petitioner-Appellant/Cross-Appellee,

**vs.**

**WINNEBAGO INDUSTRIES, INC.,**
      Respondent-Appellee/Cross-Appellant.
_____

Appeal from the Iowa District Court for Polk County, Paul D. Scott, Judge.

April Clark appeals the denial of penalty benefits in a workers' compensation dispute with her employer. Winnebago cross-appeals the commissioner's award of permanent disability benefits, the benefit rate applied, and the alternate medical care option. **AFFIRMED IN PART AND REMANDED FOR FURTHER PROCEEDINGS ON APPEAL; AFFIRMED ON CROSS-APPEAL.**

Mark S. Soldat of Mark S. Soldat, PLC, West Des Moines, for appellant.

Valerie A. Foote (until withdrawal) and Lindsey Mills of Smith Mills Schrock Blades P.C., West Des Moines, for appellee.

Considered by Bower, C.J., and Vaitheswaran and Greer, JJ.

**GREER, Judge.**

After sustaining a work injury to her right wrist in July of 2016, April Clark received benefits under the workers' compensation system.[1] Now, Clark advances a claim for additional entitlement to penalty benefits under Iowa Code section 86.13(4)(c) (2017).[2] Winnebago Industries (Winnebago) contends the commissioner and district court properly denied her request because the company

---

[1] The parties stipulated this was a work injury. Clark petitioned for benefits on January 31, 2017.

[2] Iowa Code section 86.13(4) provides:

a. If a denial, a delay in payment, or a termination of benefits occurs without reasonable or probable cause or excuse known to the employer or insurance carrier at the time of the denial, delay in payment, or termination of benefits, the workers' compensation commissioner shall award benefits in addition to those benefits payable under this chapter, or chapter 85, 85A, or 85B, up to fifty percent of the amount of benefits that were denied, delayed, or terminated without reasonable or probable cause or excuse.

b. The workers' compensation commissioner shall award benefits under this subsection if the commissioner finds both of the following facts:

(1) The employee has demonstrated a denial, delay in payment, or termination of benefits.

(2) The employer has failed to prove a reasonable or probable cause or excuse for the denial, delay in payment, or termination of benefits.

c. In order to be considered a reasonable or probable cause or excuse under paragraph "b", an excuse shall satisfy all of the following criteria:

(1) The excuse was preceded by a reasonable investigation and evaluation by the employer or insurance carrier into whether benefits were owed to the employee.

(2) The results of the reasonable investigation and evaluation were the actual basis upon which the employer or insurance carrier contemporaneously relied to deny, delay payment of, or terminate benefits.

(3) The employer or insurance carrier contemporaneously conveyed the basis for the denial, delay in payment, or termination of benefits to the employee at the time of the denial, delay, or termination of benefits.

had a reasonable basis for initially delaying benefit payments to Clark. Winnebago cross-appeals over three issues it asserts were not supported by substantial evidence: (1) error in finding permanent disability, (2) error in calculating the benefit rate, and (3) error in awarding alternate medical care.

While using a screwdriver at work, Clark noticed pain in her right hand and wrist that traveled up her arm and into her right shoulder. Following the July 2016 injury, Clark treated with a general practitioner and a physician assistant until she was referred to an orthopedic specialist, Dr. Timothy Gibbons. In October, Dr. Gibbons evaluated Clark's condition after taking diagnostic tests and noted:

> I had a comprehensive discussion with her about issues of causation. I think the x-ray implies she has [a] previous old trauma though she cannot recall when this occurred. I think this is a temporary agitation of a pre-existing condition as it stands today.

Then, after reviewing a November MRI, Dr. Gibbons declared Clark at maximum medical improvement (MMI) and discharged her with restrictions in November 2016. Her November MRI showed an ununited ulnar styloid fracture, edema, and triangular fibrocartilage perforation. He could not explain her wrist pain and could offer her no further treatment. As for any permanency, Dr. Gibbons opined, "I do not believe that she sustained any permanent partial impairment secondary to her employment, but I do believe that she would benefit from a different work assignment that she is more tolerant of, which would include avoiding power tools, especially the power tools that cause a torque."

At Winnebago's request, Dr. Joshua Kimelman performed an independent medical examination (IME) in July 2017. After reviewing the medical records and performing a physical exam, he diagnosed Clark with "[c]hronic wrist pain of

unknown etiology." Dr. Kimelman did not agree with Dr. Gibbons's opinion that Clark had a pre-existing condition with her wrist. But he causally related the wrist condition and her need for care to her work activities at Winnebago. Yet, he opined Clark was at MMI and recommended no further treatment. Zeroing in on her complaints, Dr. Kimelman noted, "I do not believe the nonunion of her ulnar styloid is in any way related to her complaint of dorsal wrist pain." In response to a series of questions in his report, Dr. Kimelman addressed Clark's degree of permanent impairment:

> Question 6: Do you believe that Claimant's work injury caused her to sustain any degree of permanent impairment? What permanent impairment would you assign? Would any portion of Claimant's impairment be attributable to pre-existing or personal condition?
> Answer: As regards to permanent impairment, that is difficult to determine as she demonstrates essentially full range of motion and while she does demonstrate relative atrophy of the right arm compared to the left, her measurement, particularly with pinch grip, was very variable, probably not indicative of organic disease.

Finding Clark should be on light lifting status, he recommended limited occasional lifting of twenty pounds without repetitive work as "restrictions . . . secondary to her job-related injury, although . . . unable to attribute an anatomic injury to her arm at this point."

Next, at the request of Clark's counsel, in August 2017, Dr. Sunil Bansal examined Clark. He addressed several questions in his IME report. First, he found Clark injured her right wrist at work and confirmed

> [t]he mechanism of injury of forceful wrist torqueing from tightening screws would lead to loaded ulnar deviation, *making it highly pathognomonic for a triangular fibrocartilage complex tear.* Given her immediate wrist pain and her lack of preexisting wrist pain, *this is highly suggestive of an acute tear or the aggravation of a pre-existing tear to make it clinically relevant.*

(Emphasis added.)  On the subject of permanency, Dr. Bansal found a permanent loss of grip strength with no prior history of impairment of her right wrist.  He found her condition was consistent with outcomes attributed to a triangular fibrocartilage complex tear.  Dr. Bansal assigned Clark a 10% permanent impairment rating of the right upper extremity, restricted her lifting to ten pounds and recommended treatment with a Mayo Clinic specialist in triangular fibrocartilage complex (TFCC) tears.

In her September 2017 hearing before the deputy workers' compensation commissioner, Clark raised a number of issues including if she was entitled to penalty benefits.[3]  With a stipulated hearing report before the deputy commissioner, the parties discussed issues that were resolved and those that were not.

> DEPUTY: I have discussed the hearing report with the parties off the record and will go over that again on the record.  The parties have stipulated as to the existence of an employer-employee relationship at the time of the alleged injury and that Ms. Clark sustained an injury on or about July 8, 2016.  They agree the alleged injury caused temporary disability during a period of recovery, but dispute whether or not the injury caused a permanent disability, so extent of disability is at issue.  I have discussed there are a number of weeks listed on the hearing report, and I'm not going to go through those again at this time, regarding temporary and healing period

---

[3] The list of issues included:
1. Is the alleged injury a cause of permanent disability?
2. If the alleged injury is a cause of permanent disability, what is the extent of disability?
3. What is the rate?
4. Is Clark entitled to alternate medical care?
5. If the alleged injury is a cause of permanent disability, is Clark entitled to interest?
6. Should Clark be awarded penalty benefits?
7. Should costs be awarded to Clark?

benefits. There was a rate dispute, and a payment log has been provided in the case. Is that Exhibit D?

EMPLOYER: Yes, Your Honor.

DEPUTY: And the [employer] intends to pay the underpaid benefits before submitting their brief in this case; is that correct?

EMPLOYER: Yes, your Honor.

DEPUTY: So there's really no dispute concerning what's been underpaid at this time. You've agreed upon the rate, and you just need—the claimant needs to receive the payment?

CLAIMANT: Yes, but to—

DEPUTY: And interest?

CLAIMANT: Yeah. To obtain that, you have to do the credit interest computation—

DEPUTY: Right.

CLAIMANT: —using the United States rule, so I can't say how much at this point.

DEPUTY: Sure, right. And that will be briefed by the parties?

CLAIMANT: It would.

DEPUTY: Unless you're able to agree. The defendant does agree that it's liable for those benefits and it has paid benefits. They've just underpaid them. And they also agree that the claimant was off work during this period of time. The defendant, are you alleging that the claimant is entitled to 37.5 weeks or is that the claimant's contention?

CLAIMANT: That's my contention.

The parties also stipulated that the commencement date for permanent partial disability benefits was July 19, 2016, but Winnebago contested any permanency finding. After a hearing, the deputy commissioner awarded Clark benefits for a 10% permanent impairment of the right upper extremity and ordered alternate care at the Mayo Clinic.[4]

---

[4] The findings were 1) Clark sustained a 10% permanent disability of her right upper extremity as a result of the stipulated workplace injury; 2) Clark's classification for calculation is married with three children, and the correct workers' compensation rate is $372.30 per week; 3) Clark is not entitled to penalty benefits for Winnebago's non-payment of permanent partial disability benefits; and 4) Clark is entitled to alternate medical care in the form of an evaluation with a specialist in TFCC tears at the Mayo Clinic per Dr. Bansal's recommendation.

Ultimately, both parties appealed the deputy's decision, but Clark first applied for a rehearing to address the penalty issue. On January 25, 2018, the deputy denied the rehearing application. The appeal to the workers' compensation commissioner came next. On July 31, 2019, the commissioner affirmed the deputy commissioner's decision in all respects noting

> I find the deputy commissioner provided a well-reasoned analysis of all the issues raised in the arbitration proceeding. I affirm the deputy commissioner's findings of fact and conclusions of law pertaining to those issues.

The next month, Clark petitioned for judicial review to the district court. Winnebago cross-petitioned. The district court affirmed the commissioner. Clark appealed, and Winnebago cross-appealed.

**Standard of review and preservation of error.**

Iowa Code chapter 17A governs judicial review of final decisions by the workers' compensation commissioner. *Ramirez-Trujillo v. Quality Egg*, *L.L.C.*, 878 N.W.2d 759, 768 (Iowa 2016). "[W]e review the district court decision to decide if our legal conclusions mirror those reached by the district court." *Meyer v. IBP, Inc.*, 710 N.W.2d 213, 225 (Iowa 2006). "If we reach the same conclusions, we affirm; otherwise we may reverse." *Watson v. Iowa Dep't of Transp.*, 829 N.W.2d 566, 568 (Iowa 2013). We will uphold the commissioner's factual findings if, after reviewing the record as a whole, we determine substantial evidence supports the findings. Iowa Code § 17A.19(10)(f). "Evidence is substantial if 'the quantity and quality of evidence . . . would be deemed sufficient by a neutral, detached, and reasonable person, to establish the fact at issue when the consequences resulting from the establishment of that fact are understood to be serious and of great

importance.'" *Gumm v. Easter Seal Soc'y of Iowa*, *Inc.*, 943 N.W.2d 23, 33 (Iowa 2020) (alteration in original) (quoting Iowa Code § 17A.19(10)(f)(1)).

Both Clark and Winnebago challenge the findings of fact of the commissioner and the application of law to those facts. Both agree that the other preserved error on those issues appealed.

**Clark's appeal.**

**Clark's request for penalty benefits.**

The deputy commissioner held Clark was not entitled to penalty benefits because the claims about her marital status and if she suffered a permanent injury were fairly debatable issues. The commissioner and district court agreed. When payment of benefits is delayed without reasonable or probable cause or excuse, we consider the directive under Iowa Code section 86.13 to determine if an employee is entitled to penalty benefits. *Mannes v. Fleetguard, Inc.*, 770 N.W.2d 826, 831 (Iowa 2009). Clark advocates for a penalty award because (1) she was underpaid based on her marital status, (2) there was no basis to deny her benefits based upon her permanent injury, and (3) Winnebago underpaid her benefits after she was placed on MMI status. Noting no legal venue addressed the issue, Clark argues she was underpaid temporary partial benefits and temporary total disability (healing period) from July 18 to November 26, 2016.

The first issue involves the question of Clark's marital status and whether the marital weekly benefit rate of $372.30 or the single weekly benefit rate of $363.86 applied. After hearing testimony from Clark and her boyfriend, Jeremy Wilson, the deputy commissioner said: "I conclude that the issue of whether Clark was married at the time of the work injury was fairly debatable. No penalty benefits

should be awarded to Clark based upon the incorrect rate." To bolster her position, Clark emphasizes her testimony and that of her boyfriend confirming her existing marriage to Joshua Clark. But she could not find her marriage license and offered no tax returns confirming her marital status. In contrast, Winnebago relied upon her W-4 tax filing at the time of her hire where she checked the box for "single" and pointed to a 2015 medical report that noted Clark's quote about her marital status as "recently divorced." The deputy commissioner found Clark credible on the subject of her marital status. Based on her testimony, the thirty-nine year old Clark confirmed her engagement to boyfriend Wilson at the same time she alleged she was still legally married to Joshua Clark. Both Clark and Wilson testified that she left her husband in September 2014 but he would not give her a divorce and she could not afford one. At the hearing, Clark offered she had an appointment at Legal Aid to pursue the divorce as well. The deputy commissioner considered the question of marital status as one involving credibility and resolved the question in Clark's favor.

Going into the arbitration hearing, the marital status of Clark remained an issue. Finding her W-4 and the medical record supported a single status, Winnebago could rely upon that information, and did, to calculate an appropriate benefit. Couple that documentary evidence with Clark's inability to produce her own documentation of her marital status, and it was reasonable for Winnebago to contest the marital status. An employer can establish a "reasonable cause or excuse" if the employer had a reasonable basis to contest the employee's entitlement to benefits. *Christensen v. Snap-On Tools Corp.*, 554 N.W.2d 254, 260 (Iowa 1996). With divergent views and competing exhibits, we agree that the

marital status question was fairly debatable and was an issue that needed resolution at a hearing with witnesses. "A claim is 'fairly debatable' when it is open to dispute on any logical basis.' Whether a claim is 'fairly debatable' can generally be determined by the court as a matter of law." *Rodda v. Vermeer Mfg.*, 734 N.W.2d 480, 483 (Iowa 2007) (citations omitted). Clark failed to prove her entitlement to penalty benefits on this issue.

Clark's second argument is more nuanced and is an attack on two fronts—one involving nonpayment of permanency payments and the other involving under-payment of late-paid temporary benefits. On the permanency benefits issue, the deputy commissioner found the determination of permanent injury was a fairly debatable question. Contending it had good cause, Winnebago points to the early medical conclusions of Dr. Gibbons. Winnebago argues it could reasonably rely on Dr. Gibbons's opinion that Clark suffered no permanent injury in the work accident. It summarized its position:

> As Clark continued to treat for her work injury beyond the commencement date of July 19, 2016, she was paid intermittent temporary partial disability benefits, but an assessment as to her permanent disability arising from the work injury was unable to be made until she concluded her treatment. Clark contends that "there was no evidence at all that Winnebago was conducting an investigation" during that time as to Clark's potential permanent disability from the work injury, but that "investigation" is clearly evidenced by the medical records, as Winnebago was continuing to provide medical treatment for Clark. The treatment records did not provide any indication of permanent disability while Clark's treatment was ongoing. Once Clark concluded her treatment, signaled by Dr. Gibbons assignment of MMI on November 17, 2016, he opined that Clark did not sustain any permanent impairment as a result of the work injury. Winnebago relied upon Dr. Gibbons' opinion, the first opinion received with regard to permanency, and no permanent disability benefits were paid.

Clark argues that Dr. Gibbons's opinion came after the stipulated July 19, 2016 date to commence the permanent partial disability benefits and that Winnebago failed to show it had an excuse then to not pay the benefits. We look to the applicable statute, which requires the commissioner to award penalty benefits if both of the following are met:

> (1) The employee has demonstrated a denial, delay in payment, or termination of benefits.
> (2) The employer has failed to prove a reasonable or probable cause or excuse for the denial, delay in payment, or termination of benefits.

Iowa Code § 86.13(4)(b)(1)-(2). But here, the question of permanency was disputed based on the treating doctors' opinions and the respective medical opinions offered by both sides. The commissioner refused to award penalty benefits for the delay in commencing permanent partial disability compensation. And the first medical evidence supporting Clark's claim of permanent injury was not authored until Dr. Bansal's August 2017 report. Winnebago argues the overwhelming medical evidence found no permanency and, thus, it could legitimately contest whether Clark's complaints were a permanent condition arising from the work injury. We think there is substantial evidence to support the commissioner's finding that there was a legitimate dispute as to the permanency of Clark's injury. *See Burton v. Hilltop Care Ctr.*, 813 N.W.2d 250, 267 (Iowa 2012) (noting the reasonableness of the employer's denial does not turn on if the employer was right).

In a final swing at penalty benefits, Clark contends the issue of delayed payments of temporary benefits was not considered even though she proved the delay. Clark argues she was denied both temporary partial disability benefits and

healing period benefits during the periods of July 19 to August 9, 2016, and from September 22 to December 7, 2016. Calling it a new argument on appeal, Winnebago urges:

> [T]he issue of late-paid temporary benefits [was not addressed] because it was not raised by Clark's counsel until well after the arbitration hearing, in her Application for Rehearing filed on January 10, 2018. Again, the only issues with regard to interest and penalty timely raised by Clark and considered by the hearing deputy were whether Clark was entitled to penalty benefits for an underpayment of benefits, if one was found, and whether Clark was entitled to penalty benefits for Winnebago's nonpayment of permanency benefits. The hearing deputy properly considered these issues and determined that Clark's "claim was fairly debatable and she is not entitled to penalty benefits."

Still, Clark directs us back to the record made about the pre-trial hearing report and the parties' stipulation. In a fair assessment of that record, Clark reminds us that Winnebago agreed there was an underpayment when the deputy commissioner asked, "So there's really no dispute concerning what's been underpaid at this time. You've agreed upon the rate, and you just need—the claimant needs to receive the payment?"

Then, at the hearing, the calculation of interest or penalty was reserved for later briefing after the deputy commissioner decided which benefit rate applied. We agree that the issue of the penalty involving the underpayment of the temporary benefits was not part of the deputy commissioner's decision. Although again raised in Clark's rehearing application, the deputy commissioner summarily denied the application. In the rehearing application, using the single benefit rate, Clark calculated "47 days of principal payment delays in payment of $1,469.13 of temporary partial benefits and healing period compensation." Clark then requested a 35% penalty based on the temporary benefit underpayments. Further,

Clark argues Winnebago failed to establish a reasonable cause for failing to timely make the temporary benefit payments. Incorporating all arguments made in the rehearing application, Clark appealed this penalty issue to the district court. Winnebago notes:

> Claimant filed an Application for Rehearing on January 10, 2018, urging for the issues of penalty and interest to be reconsidered. Claimant failed to address the credit and interest computations of weekly compensation in her post-hearing brief as instructed by the court on pages 4 and 5 of the hearing transcript, and the Application for Rehearing was essentially an improper attempt to make additional arguments that were not addressed in Claimant's post-hearing brief. Defendants responded, arguing that Claimant's failure to address all of her arguments in her post-hearing brief should not give rise to an additional opportunity to do so.

Winnebago argues it is improper and untimely to consider now these arguments made after the ruling on the issues. Yet Winnebago does not dispute the stipulation that it underpaid temporary benefits. Likewise, Clark quotes from her post-hearing brief directly disputing Winnebago's current theme:

> Likewise, the question of whether there have been underpayments of [healing period] compensation, [temporary partial disability benefits], and [permanent partial disability]compensation, which are subject to a section 86.13(4) penalty cannot be determined, until the weekly earnings and weekly compensation rate are known. All that can and should be determined is that Winnebago has failed to "satisfy all of the . . . criteria" in Iowa Code § 86.13(4)(c) with "evidence."
>
> Accordingly, it is requested that after the weekly earnings and compensation rate is determined, Clark and Winnebago be given an opportunity to perform the credit/interest computations and either stipulate to them or submit any dispute to the deputy: "We agree that it is the commissioner's obligation in the enforcement of section 85.30 ('to resolve the dispute . . . if the parties cannot agree on interest recoverable for late payments of weekly benefits.'")

(Fourth and fifth alterations in original.) (Citations omitted.) We find the issue of the delayed payment of temporary benefits appears to have been raised by

Clark—both before the hearing and in her post-hearing brief—and we find the issue was not addressed by the deputy commissioner. Without a decision to review, the proper remedy is to remand for a determination of the penalty issue as to the underpayment of temporary partial permanent benefits and healing period compensation as stipulated by the parties. Thus, we remand to the district court with directions to remand to the commissioner for further proceedings consistent with this opinion. *See Baker v. Bridgestone/Firestone*, 872 N.W.2d 672, 684-85 (Iowa 2015).

We otherwise affirm the rulings on the penalty question because the determination of the marital status of Clark involved the credibility of witnesses, it was not unreasonable to hold benefits until the hearing on the issue was held, and the permanency determination was fairly debatable.

**Winnebago's cross-appeal.**

### Substantial evidence of a permanent injury.

All parties agree that Clark's right wrist injury is a scheduled member injury compensated based upon functional disability. *See* Iowa Code § 85.34. Functional disability is assessed solely by determining the impairment of the body function of the employee. *Simbro v. Delong's Sportswear*, 332 N.W.2d 886, 887 (Iowa 1983). "Functional disability is limited to the loss of physiological capacity of the . . . body part." *Id.* Where the parties part ways is on the permanency aspect of Clark's July 2016 injury. Finding the decision of the deputy commissioner to be "illogical," Winnebago argues the finding of full range of motion in Dr. Kimelman's report equates to a 0% impairment rating and no other finding makes sense. Winnebago discounts the IME conclusions of Dr. Bansal by urging that Clark failed

to establish her injuries were permanent by substantial evidence. Dr. Bansal found and the commissioner accepted a 10% permanent disability determination of Clark's injury. Pointing to the omission of a permanency finding by all of Clark's treating doctors and Dr. Kimelman, the IME doctor, Winnebago contends the weight of the evidence supports no permanency finding. Winnebago argues it was illogical for the commissioner to find otherwise and for the district court to affirm.

Physicians are the logical individuals to evaluate permanency of an injury. *See Schoenfeld v. FDL Foods, Inc.*, 560 N.W.2d 595, 598 (Iowa 1997). Winnebago draws our focus to Dr. Kimelman's opinions. It trumpets the deputy commissioner's "most persuasive" finding concerning Dr. Kimelman's report. Still, while the deputy commissioner did give great credence to the Kimelman report, stating specifically, "I find the opinion of Dr. Kimelman most persuasive," there was no finding that the Dr. Bansal report had no persuasive effect. The deputy found "the impairment rating issued by Dr. Bansal unrebutted." With no contrary reference to the impairment rating assigned by Dr. Bansal, the deputy commissioner accepted it. To be clear, no reference to an impairment rating might mean a 0% rating, but when asked about permanency impairment, Dr. Kimelman noted "it is difficult to determine" and then discussed Clark's normal objective findings. This could mean either he cannot formulate a firm opinion or that he believes there is no impairment. Thus, we think the report is hardly as conclusive as Winnebago would have us believe. We decline to speculate as to which opinion Dr. Kimelman might voice.

Finally Winnebago attacks the findings contained in Dr. Bansal's report by comparing it to the findings of the treating doctors and Dr. Kimelman. Winnebago addressed its view of the medical dichotomy

> Dr. Bansal did not review Clark's MRI to determine whether the findings actually correlated to her area of pain in her wrist and therefore his conclusions are speculative, at best. The remaining physicians in the record did not assign any degree of permanent impairment because the MRI findings did not correlate with Clark's area of pain in her wrist. Both Dr. Kimelman and Dr. Gibbons reviewed Clark's MRI. While Dr. Kimelman and Dr. Gibbons had differing opinions with regard to whether Clark had a pre-existing condition in her wrist, both agreed that the nonunion of the ulnar styloid was not related in any way to Clark's complaint of dorsal wrist pain. The finding on the MRI of an ulnar styloid avulsion in the TFCC lesion was away from Clark's area of maximum tenderness, which was the dorsal area of her wrist.

But as is often the case, there were multiple opinions on the cause of Clark's pain and how that translated to a permanent condition related to the work injury. Dr. Kimelman diagnosed Clark with chronic pain[5] but found it "difficult to assess specifically where her pain is coming from." When asked if Clark's right wrist condition and subsequent need for care were causally related to her work activities at Winnebago on July 8, 2016, Dr. Kimelman said "yes." And the deputy commissioner could consider that when Dr. Kimelman was asked about any permanent impairment, he did not affirmatively confirm there was zero impairment but only opined "that is difficult to determine." In contrast, Dr. Bansal expressed firm opinions about Clark's condition.

---

[5] Winnebago also argued Clark had a pre-existing chronic pain syndrome, but we found no evidence in this record that previous condition in any way related to her right wrist.

To arrive at an answer, the deputy commissioner considered the expert testimony together and found the unrefuted permanency rating of 10% calculated by Dr. Bansal persuasive. *See Evenson v. Winnebago Indus., Inc.*, 881 N.W.2d 360, 366 (Iowa 2016) ("An agency's decision does not lack substantial evidence because inconsistent conclusions may be drawn from the same evidence." (quoting *Coffey v. Mid Seven Transp. Co.*, 831 N.W.2d 81, 89 (Iowa 2013))).

The district court agreed, finding:

> The question in this instance is not whether the evidence might support a different finding, but whether the evidence supports the findings actually made. Viewing the record as a whole, there is substantial evidence to back up Deputy Palmer's finding of facts as to the nature and extent of Clark's 10% permanent disability as required by Iowa Code section [17A.19(10)]. There is no evidence to support the position that the deputy's findings were irrational or illogical.

Yet a disability determination presents a "mixed question of law and fact." *See Larson Mfg. Co., Inc. v. Thorson*, 763 N.W.2d 842, 856 (Iowa 2009). Factual determinations are clearly vested in the discretion of the workers' compensation commissioner, so we defer to the commissioner's findings "if they are based on 'substantial evidence in the record before the court when that record is viewed as a whole.'" *Id.* at 850 (quoting Iowa Code § 17A.19(10)(f)). Substantial evidence is "the quantity and quality of evidence that would be deemed sufficient by a neutral, detached, and reasonable person, to establish the fact at issue when the consequences resulting from the establishment of that fact are understood to be serious and of great importance." Iowa Code § 17A.19(10)(f)(1). Although as fact finder we might have decided this case differently, we conclude the evidence provides substantial evidence supporting the findings actually made. *See*

*Sherman v. Pella Corp.*, 576 N.W.2d 312, 320 (Iowa 1998). Winnebago argues it is illogical to find Dr. Kimelman's opinion to be the most persuasive but then follow Dr. Bansal's opinion on the permanency question. But on the permanency question, Dr. Bansal offered:

> Ms. Clark has a loss of grip strength, which is consistent with the medical literature of outcomes for [TFCC] tears treated six months past the injury date. In this case, Ms. Clark has not had treatment at all. Ms. Clark has about a 30% loss of grip strength. The study found an average loss of 17%. Based on Table 16-34 of the AMA Guides of Evaluation for Permanent Impaimnent, Fifth Edition, losses of 10 to 30% are assigned an upper extremity impairment of 10%.

Applying law to fact, this opinion from Dr. Bansal provides substantial evidence of a permanent disability. We affirm the commissioner's ruling on the permanency rating.

### Application of appropriate rate.

At the hearing before the deputy commissioner, Winnebago argued Clark's weekly benefit rate is $363.86 based upon her status as single. Clark argued her weekly rate is $372.30 based on her claim that she was married at the time of the work injury. While there was evidence supporting both arguments, the deputy commissioner found Clark to be married at the time of the injury. Rather than questioning whether the evidence before us may support a different finding than the one made by the commissioner, we ask whether the evidence supports the finding actually made. *See Larson Mfg. Co.*, 763 N.W.2d at 850.

Because this issue relates back to the discussion in the penalty section, and to be consistent, we find the appropriate benefit rate was the "married at the time of the work injury" rate. We agree with the commissioner's findings.

**Alternate medical care award.**

On this last issue, Winnebago asserts the award of alternate medical care is irrational, illogical, or wholly unjustifiable because Dr. Bansal is the only medical expert who recommended this care. To recap, Bansal opined the tear to the TFCC was consistent with the mechanism of injury, Clark had not had treatment for that condition, and a Mayo Clinic specialist was required to assess her condition. By contrast, Winnebago points to Dr. Gibbons's opinion that the tear from a previous older trauma was not consistent with the area of tenderness Clark identified and to Dr. Kimelman's finding that the tear did not explain the pain to the right forearm. Winnebago argues Dr. Bansal did not personally review the MRI imaging, and because other doctors found the tear incidental to the pain complaints, Dr. Bansal misinterpreted the causation between the tear and the pain. But even the doctors relied upon by Winnebago approached the causation question differently. And in any question involving a battle of experts, the fact finder must glean from those expert opinions medical conclusions supported by the evidence. *See Grundmeyer v. Weyerhaeuser Co.*, 649 N.W.2d 744, 752 (Iowa 2002) ("The commissioner, as the fact finder, determines the weight to be given to any expert testimony. Such weight depends on the accuracy of the facts relied upon by the expert and other surrounding circumstances. The commissioner may accept or reject the expert opinion in whole or in part." (quoting *Sherman*, 576 N.W.2d at 321)).

"We will reverse the commissioner's application of the law to the facts 'only if the commissioner's application [is] irrational, illogical or wholly unjustifiable.'" *Schutjer v. Algona Manor Care Ctr.*, 780 N.W.2d 549, 558 (Iowa 2010) (alteration in original) (citation omitted). Here, the deputy commissioner could find the pain

to the right wrist and forearm began after the July work injury and continued without relief until the time of the hearing. The differing opinions of the medical providers offered context and were noted in the arbitration decision. Although there were differing medical opinions, Dr. Kimelman did confirm Clark had chronic right wrist pain and her condition was causally related to her work activities at Winnebago even though he could not explain her musculoskeletal pain in her right forearm based on the MRI imaging. We find it is not irrational, illogical, or wholly unjustifiable for the deputy commissioner to rely on Dr. Bansal's definitive diagnosis of Clark's condition while still respecting the concerns and questions Dr. Kimelman raised. Because the alternate medical care recommendation was reasonable given Dr. Bansal's opinions, we affirm the award.

**Conclusion.**

We find no basis for an award to Clark of penalty benefits arising from the appropriate benefit rate for a married injured worker. We find no basis for an award to Clark for penalty benefits related to the failure to pay permanency benefits because that issue was fairly debatable. On the other hand, we remand for a determination on the applicability of a penalty for the underpayment of temporary benefits.

Substantial evidence supports the commissioner's finding of a permanent injury and the compensation rate calculated at the married rate. With that determination in hand and reviewing the record as a whole, we affirm the award of alternate medical care.

**AFFIRMED IN PART AND REMANDED FOR FURTHER PROCEEDINGS ON APPEAL; AFFIRMED ON CROSS-APPEAL.**