CARGILL, INC., Appellee,

v.

Kevin CONLEY, Appellant.

No. 99–0461.

Supreme Court of Iowa.

Dec. 20, 2000.

---

* Senior judge assigned by order pursuant to Iowa Code section 602.9206 (1999).

Thomas J. Currie of Tom Riley Law Firm, P.L.C., Cedar Rapids, for appellant.

Mark A. Woollums and Jean Dickson Feeney of Betty, Neuman & McMahon, L.L.P., Davenport, for appellee.

TERNUS, Justice.

The appellant, Kevin Conley, suffered a back injury arising out of and in the course of his employment by the appellee, Cargill, Inc. He filed this workers' compensation action and was awarded permanent partial disability benefits based on a twenty-percent industrial disability. On judicial review in the district court, the award was reversed because the court determined that the commissioner had considered an improper factor in making her award, namely, the employer's discriminatory refusal to allow the employee to bid into other jobs upon his return to work.

On appeal, the employee challenges this decision on two bases: (1) the alleged error upon which the district court based its reversal was not raised before the commissioner and, therefore, error was not preserved; and (2) the commissioner's consideration of Cargill's refusal to place Conley in certain positions was not improper. Cargill argues that the district court decision was correct and that, in any event, there was insufficient evidence to support the commissioner's finding of a twenty-percent industrial disability.

We find that error was not preserved on the question of whether the commissioner considered an improper factor in evaluating Conley's industrial disability. We also reject Cargill's contention that the commissioner's decision is not supported by substantial evidence. Accordingly, we reverse the decision of the district court and remand for entry of an order affirming the agency decision.

I. *Background Facts and Proceedings.*

From 1990 through the time of hearing, Conley was employed by Cargill at its corn milling facility. He had worked in several different positions, but they all required repetitive lifting, bending and stooping in varying degrees. During this period, Conley sustained three back injuries that the parties agree were work related. The first time that Conley injured his back he received conservative treatment and was eventually able to return to his regular job without modification. After the second injury it was thought that he had a probable disc herniation, but he was again treated conservatively and released to return to work. Initially, Cargill was reluctant to return Conley to his normal position due to the risk of reinjury. But after Conley filed a grievance, he was allowed to return to his previous job as a starch loader.

Within a few months of his return to his former position, Conley reinjured his back. This time the doctors confirmed a large herniated disc and performed back surgery. Conley returned to work three weeks later, but to a position other than the one he occupied at the time of his most recent injury. Cargill disqualified him

from bidding into certain jobs at the plant based on medical restrictions, even though Conley contended that he was fully capable of performing the requirements of those positions.

Conley filed this workers' compensation action seeking benefits for all three back injuries. He also filed a lawsuit in federal court under the Americans with Disabilities Act, claiming that Cargill had engaged in discriminatory practices by the "demotion and selective promotion of Mr. Conley, a qualified individual with a disability, who is able to perform the essential functions of his position with or without reasonable accommodation because of his disability [in] retaliation for filing workers' compensation and/or grievance claims." The ADA case was unresolved at the time of the workers' compensation hearing.

There was conflicting evidence at the hearing as to the amount of disability Conley suffered as a result of his back injuries. The parties' expert medical witnesses agreed that Conley had a functional impairment of seven to eight percent of the whole body. They disagreed on the impact of this impairment. Contrary to the normal positions of the employer and claimant in such cases, Cargill argued that Conley was restricted in lifting, stooping, and bending, a contention that Conley disputed. Both parties introduced medical testimony supporting their positions on this issue. Cargill's medical witnesses gave the opinion that Conley was precluded from doing jobs that required lifting over fifty pounds or repetitive bending and twisting; Conley's experts testified that he could return to work with no restrictions.

Conley testified that he was capable of performing the jobs from which he had been disqualified if given the opportunity. He also testified that these positions have a higher base pay and more overtime. Conley acknowledged that overtime is made available on the basis of seniority and his seniority was approximately 71 out of 100. He also acknowledged that he already worked about sixty hours a week.

Nevertheless, Conley believed that his current annual income of $40,000 to $45,000 could be as high as $60,000 in one of the jobs from which he was disqualified.

In his ruling, the deputy concluded that Conley had not sustained any permanent disability as a result of the first two injuries to his back. These conclusions have not been challenged on appeal.

As for the third back injury, the deputy found that it caused a permanent disability. In determining the amount of industrial disability suffered by Conley, the deputy considered the factors set out in *McSpadden v. Big Ben Coal Co.*, 288 N.W.2d 181, 192 (Iowa 1980). The deputy found that Conley had permanent restrictions imposed by his treating physicians "of no lifting more than 50 pounds and no repetitive lifting, bending or twisting." He also noted there was other evidence that Conley could perform many jobs in the plant that required lifting, bending and twisting above these restrictions. "However," the deputy stated, "[Cargill] is preventing [Conley] from being eligible for such jobs which could result in [Conley] receiving higher earnings." After considering these factors, including Conley's age, education and prior work experience, the deputy found that Conley had sustained a twenty-percent industrial disability. Conley was awarded permanent partial disability benefits on this basis. The industrial commissioner affirmed the deputy's decision.

On judicial review, the district court ruled that the deputy "could not consider as a basis or factor in determining industrial disability anything that is specifically part of Conley's discrimination claim." The court stated that the deputy had wrongly considered "Cargill's prevention of Conley's eligibility based on medical restrictions for certain jobs" because this same conduct was the basis for Conley's discrimination claim. In view of the deputy's consideration of this factor, the court remanded the case to the industrial commissioner for an evaluation of Conley's

industrial disability without consideration of "the employer's denial of certain positions to the employee based on medical restrictions."

Conley appealed the district court's decision and on appeal alleges that the court erred in ruling that the commissioner could not consider Cargill's conduct in denying Conley certain positions on the basis of his medical restrictions. Conley also contends that Cargill did not preserve this issue for review. Cargill asserts that the district court's ruling was correct, noting that this court has stated that an employer's "refusal to give any sort of work to a claimant after he suffers his affliction may justify an award of disability." *McSpadden*, 288 N.W.2d at 192. Cargill contends alternatively that, even if the district court was correct in holding that the agency considered an improper factor, the district court should be affirmed on the basis that there is not substantial evidence to support the agency's finding of twenty-percent industrial disability. *See generally In re Estate of Voss*, 553 N.W.2d 878, 879 n. 1 (Iowa 1996) (stating that court may affirm "on any basis appearing in the record and urged by the prevailing party").

II. *Scope of Review.*

 Iowa's Administrative Procedure Act, Iowa Code chapter 17A (1999), governs our review of workers' compensation cases. *See IBP, Inc. v. Al–Gharib*, 604 N.W.2d 621, 627 (Iowa 2000). Therefore, we review for correction of errors of law. *See Koehler Elec. v. Wills*, 608 N.W.2d 1, 3 (Iowa 2000). Applying the standards of Iowa Code section 17A.19(8), we determine whether our legal conclusions are the same as those reached by the district court. *See Manpower Temp. Servs. v. Sioson*, 529 N.W.2d 259, 262 (Iowa 1995). *See generally* Iowa Code § 17A.19(8) (allowing court to reverse agency if agency decision is affected by an error of law or is not supported by substantial evidence). If our conclusions are the same, we affirm; if we disagree with the conclusions of the dis-

trict court, we must reverse. *See Bearce v. FMC Corp.*, 465 N.W.2d 531, 534 (Iowa 1991).

 The factual findings of the commissioner are binding if supported by substantial evidence. *See Sioson*, 529 N.W.2d at 262.

Evidence is substantial if a reasonable person would find it adequate for reaching a conclusion, even though a reviewing court might reach a contrary inference. The mere possibility that the record might support another conclusion does not permit the reviewing court to make a finding inconsistent with the agency finding so long as there is substantial evidence to support it.

*Oscar Mayer Foods Corp. v. Tasler*, 483 N.W.2d 824, 830 (Iowa 1992).

III. *Was Error Preserved on the Commissioner's Consideration of the Employer's Refusal to Allow the Employee to Bid into Other Jobs as a Factor in Assessing the Employee's Industrial Disability?*

 It has long been the law in Iowa that claims not raised before the industrial commissioner will not be considered by the courts on judicial review. *See Klein v. Furnas Elec. Co.*, 384 N.W.2d 370, 375 (Iowa 1986); *McSpadden*, 288 N.W.2d at 184; *Paveglio v. Firestone Tire & Rubber Co.*, 167 N.W.2d 636, 639 (Iowa 1969). Cargill claims that it raised this issue in its attorney's opening remarks to the deputy prior to the hearing. In the opening statements made at the hearing, the parties' attorneys pointed out to the deputy that this case was unusual in that the employee was arguing that he was not as restricted in his ability to work as the employer claimed. The parties alerted the deputy to the fact that there was a disability discrimination claim pending in federal court. In the context of this discussion, Cargill's attorney stated,

I do also think, though, however, the evidence is going to show that there is a pending claim in United States District

Court involving Mr. Conley for a disability discrimination claim, and it's our opinion, and I don't know if the agency's ruled on this or not, I think they have, *that the agency is not vested with jurisdiction to determine discrimination questions.* So it is a unique case. I mean, we've got parallel cases going on basically surrounding the same sets [sic] of facts, so I would like to alert Your Honor to that.

(Emphasis added.)

This statement was Cargill's only reference at the hearing to the discrimination claim. Moreover, Cargill did not mention the discrimination claim or its impact on the workers' compensation action in its appeal to the industrial commissioner. (Cargill simply argued that Conley had "not established by a preponderance of the evidence that he sustained an industrial disability equal to twenty-percent of the body as a whole.") Of overriding significance is the fact that at no time in the proceedings at the agency level did Cargill argue that the agency could not consider Cargill's restriction of Conley's job opportunities on the issue of industrial disability. We do not think Cargill's fleeting reference to the limited jurisdiction of the industrial commissioner served to alert the deputy to the claim made on judicial review that the employer's conduct was an improper factor to consider in assessing Conley's industrial disability.

■ Cargill argues alternatively that this issue is one of subject matter jurisdiction and, therefore, it may be raised at any time. "Subject matter jurisdiction is the authority of a court to hear and determine cases of the general class to which the proceedings belong, not merely the particular case then occupying the court's attention." *Bailey v. Batchelder*, 576 N.W.2d 334, 337 (Iowa 1998). Once the issue is raised, the court must determine whether it has jurisdiction, regardless of how or when the issue is presented. *See id.* at 337–38; *cf. Shirley v. Pothast*, 508 N.W.2d 712, 715 (Iowa 1993) ("Challenges to the subject matter jurisdiction of the district court can be raised at any time during the course of the proceedings.").

The problem with Cargill's argument is that the industrial commissioner did have subject matter jurisdiction of the claim presented to her—a claim for workers' compensation benefits. *See Shirley*, 508 N.W.2d at 715. The fact that the agency may have considered an improper factor in determining industrial disability does not change the fundamental nature of the claim it was adjudicating.

This case is unlike the factual situation presented in *Ottumwa Housing Authority v. State Farm Fire & Casualty Co.*, 495 N.W.2d 723 (Iowa 1993), a case upon which Cargill relies.[1] In *Ottumwa Housing*, this court held that the employees' claims of sexual harassment were not cognizable under the workers' compensation statute, but rather the employees had civil claims for sexual discrimination under state and federal law. 495 N.W.2d at 729. The distinguishing feature in *Ottumwa Housing* is that the alleged injury sustained by the employees was directly caused by the employer's discriminatory conduct; this injury and its cause were the same in the workers' compensation proceeding and in the civil suits. In contrast, in the present case, Conley potentially has viable claims for both workers' compensation benefits and civil damages. *See* 2A Arthur Larson & Lex K. Larson, *The Law of Workmen's Compensation* § 68.34(e), at 13–261 (1994) (discussing problem of overlapping claims and suggesting that "a claimant may have a workers' compensation remedy for so much of his injury as the compensation act was designed to cover, and still have his typical civil rights remedies for any other injuries or losses stemming from the em-

1. Cargill also relies on our decision in *Baird v. Ottumwa Community School District,* 551 N.W.2d 874 (Iowa 1996). *Baird* is distin-
guishable for the same reasons that *Ottumwa Housing* is inapposite.

ployment discrimination"). His claim for statutory benefits arises from his back injury; his claim for civil damages arises from the employer's allegedly discriminatory conduct. Although there may very well be an overlap between these two claims that might affect the determination of industrial disability in the workers' compensation action, this overlap is not a problem of subject matter jurisdiction.

In summary, Conley had a legitimate claim for workers' compensation benefits, independent of the employer's allegedly discriminatory actions. The industrial commissioner had subject matter jurisdiction of this claim. The issue of how industrial disability should be assessed when the employer is alleged to have denied the employee job opportunities for discriminatory reasons is a separate and distinct question. Therefore, it was imperative that the employer raise this issue in the agency proceedings in order to preserve the issue for judicial review. Having failed to do so, we will not consider the matter on appeal.

IV. *Was the Industrial Commissioner's Award of Permanent Partial Disability Benefits Supported by Substantial Evidence?*

We now consider the employer's alternative argument that the industrial commissioner's finding of a twenty-percent industrial disability is not supported by substantial evidence in the record. As noted earlier, the industrial commissioner's findings of fact are binding on us if supported by substantial evidence. *See Sioson*, 529 N.W.2d at 262. In viewing the record, "we consider only evidence favorable to the [agency's] findings, whether or not contradicted." *Second Injury Fund v. Hodgins*, 461 N.W.2d 454, 456 (Iowa 1990).

Here, the evidence shows that Conley was a thirty-four year old high school graduate whose employment had historically been in the areas of construction and maintenance. The record also reveals that these jobs generally require lifting, bend-

ing, and twisting of a repetitive nature. It was undisputed that Conley's back injury resulted in a functional impairment of seven to eight percent. The agency's finding that Conley was subject to permanent restrictions on the type of jobs he could perform was supported by expert testimony that Conley should not lift more than fifty pounds and should not engage in frequent bending or twisting. Although Conley was earning a slightly higher rate of pay after his injury than he was earning at the time of his injury, there was also evidence that his earnings would be substantially higher if he could have performed the jobs from which he was disqualified by his medical restrictions.

With respect to the evidence of potential earnings in other positions, Cargill complains that Conley was allowed to testify, over Cargill's hearsay objection, to what other employees were earning in other jobs at the plant. Cargill does not assign the admission of this evidence as error on appeal; it only asks that we not consider Conley's testimony in judging the sufficiency of the evidence. Initially, we note that "[s]trict rules of evidence are not to be applied in proceedings before the industrial commissioner." *Morrison v. Century Eng'g*, 434 N.W.2d 874, 877 (Iowa 1989). Additionally, the hearsay information to which Conley testified was certainly within the knowledge of Cargill, Cargill being the entity paying the workers in question. Therefore, witnesses and documents to impeach Conley's testimony were readily available to Cargill and could have been submitted in evidence. *See generally Hamer v. Iowa Civ. Rights Comm'n*, 472 N.W.2d 259, 262 (Iowa 1991) ("When relevant evidence is within the control of a party whose interest is affected, a court may infer that the evidence, if not produced, would be unfavorable to that party."). Under these circumstances, we think it is appropriate to consider Conley's testimony in assessing the evidence.

Cargill also argues that Conley's job restrictions resulted not from his inability to do the jobs, but from an agreement between Conley and Cargill that predated Conley's third back injury. This purported agreement was evidenced by an internal Cargill memo prepared after the settlement of Conley's grievance that arose after his second back injury. In this memo, Cargill states that Conley could return to his previous job, but that if he sustained another back injury, Cargill "may place [him] on a medically restricted job." This memo was not signed by Conley and Conley disputed that he had agreed to job restrictions at Cargill's discretion should he suffer a third back injury. The deputy did not mention this agreement in his findings. Therefore, consistent with our rule that we interpret the agency's findings broadly so as to support its decision, *see Hodgins*, 461 N.W.2d at 455, we conclude that the agency did not find that Conley had voluntarily agreed to these restrictions. Because there is substantial evidence in the record to support a finding that Conley did not agree to future job limitations, we disregard this argument in assessing the evidentiary support for the agency's decision.

We hold that there was substantial evidence to support the commissioner's decision that Conley had a twenty-percent industrial disability. Therefore, we reverse the decision of the district court that reversed the commissioner's award of permanent partial disability benefits and remand to the court for entry of an order affirming the commissioner's decision.

**REVERSED AND REMANDED.**

McGIVERIN, S.J.,* participates in place of NEUMAN, J., who takes no part.

---

* Senior judge assigned by order pursuant to Iowa Code section 602.9206 (1999).