# IN THE COURT OF APPEALS OF IOWA

No. 22-1334
Filed June 7, 2023


**RASHID PHARMACY, P.L.C.,**
    Petitioner-Appellant,

**vs.**

**IOWA DEPARTMENT OF HEALTH AND HUMAN SERVICES,**
    Respondent-Appellee.
_____


        Appeal from the Iowa District Court for Polk County, Samantha Gronewald,

Judge.


        Rashid Pharmacy, P.L.C. appeals from judicial review of an adverse

administrative ruling. **AFFIRMED.**


        Adam D. Zenor, Allyson F. Aden, and Derek R. LaBrie of Zenor Kuehner,

P.L.C., Des Moines, for appellant.

        Brenna Bird, Attorney General, Eric Wessan, Solicitor General, and Lisa

Reel Schmidt, Assistant Attorney General, for appellee.


        Heard by Schumacher, P.J., and Chicchelly and Buller, JJ.

**BULLER, Judge.**

Rashid Pharmacy, P.L.C. (Rashid), appeals from judicial review following a decision by the Iowa Department of Health and Human Services (HHS[1]) to suspend Medicaid payments following a credible allegation of fraud. Rashid specifically alleges that HHS failed to give proper notice, that substantial evidence did not support the agency's determination there was a credible allegation of fraud, and that HHS abused its discretion when it declined to find good cause to modify or halt the suspension of payments. We affirm the district court, finding substantial evidence supports the agency's findings and discerning no abuse of discretion or error of law.

## I.      Background Facts and Proceedings

Rashid is an enrolled pharmacy provider in the Iowa Medicaid program and serves patients across three states, including Iowa. HHS, specifically Iowa Medicaid, administers the program within the state.

In February 2020, the Iowa Medicaid Fraud Control Unit (MFCU) notified HHS that MFCU was investigating Rashid for "submitting payment claims to Medicare and Medicaid for prescriptions that are not supported by inventory and purchase records." In other words, MFCU was investigating Rashid for fraud. An invoice review completed by federal investigators was attached to the notice, in which auditors explained that Rashid did not have adequate purchases to support various Medicare payments Rashid received, with 79 of 163 drugs sampled

---

[1] As used in this opinion, "HHS" refers to the Iowa Department of Health and Human Services and any of its various divisions, subunits, or other constituent parts.

returning a shortage and a total potential loss of more than $8 million. Also attached was email correspondence in which federal authorities requested state assistance with their investigation and a state field auditor's report detailing potential Medicaid exposure within the scope of Rashid's fraud.

Ordinarily, HHS would quickly suspend payment to suspected Medicaid fraudsters upon notice of an MFCU investigation. Here, however, MFCU requested an exception to temporarily avoid suspending payments to Rashid, as an early suspension could have tipped off Rashid or otherwise jeopardized the investigation. HHS noted the request and—according to customary practice— opened an investigative file but took no action to suspend payments at that point.

In March 2021, a federal search warrant was issued as part of the investigation. The warrant authorized seizure of a long list of items, including: "[a]ny and all records relating to the purchase, ordering or procurement of medications; medication inventories; the delivery of medications; the return of medications; the transfer, disbursement, or disposal of medications; and the payment and billing of medications."

In June, the suspension exception ended. HHS reviewed the notice and attachments received in February 2020 and determined there was a credible allegation of Medicaid fraud against Rashid. HHS employees testified that this determination was based on the documents received, the state field auditor's report regarding Medicaid exposure, and the ongoing state and federal law enforcement investigations.

HHS informed Rashid in writing that it was immediately suspending Medicaid payments under Title 42, section 1396b(i)(2)(c) of the United States

Code and Title 42, sections 455.2 and 455.23 of the Code of Federal Regulations, having found no good cause to withdraw or reduce the suspension. Rashid appealed, arguing (1) HHS did not provide adequate notice before suspension; (2) there was no credible allegation of fraud to suspend Rashid; and (3) even if there was a credible allegation, a good cause exception should apply to withdraw or reduce the suspension. Rashid also sent a letter to HHS staff requesting reconsideration of suspension, reiterating the first and third arguments.

After receiving the letter requesting reconsideration, HHS contacted the local managed care organizations (MCOs) in Rashid's area, and the MCOs informed HHS they would not be harmed by Rashid's potential suspension. HHS staff also met with MFCU investigators, who confirmed that a theory of defense put forward by Rashid—concerning certain price-regulated drug invoices and inventory—did not impact their investigation or alter their findings. HHS staff also reviewed correspondence Rashid sent to federal and state investigators and analyzed Rashid's financials (which revealed that suspended Medicaid payments accounted for 18% of the company's revenue). HHS staff determined that none of these considerations undermined their previous determination that there was a credible allegation of fraud and that a good-cause exception was not justified. HHS denied Rashid's request for reconsideration.

In September 2021, an administrative law judge (ALJ) heard Rashid's suspension appeal and issued a proposed decision in favor of HHS. The ALJ proposed denying the appeal and ruled that (1) the ALJ lacked authority to decide the issue of notice, as that issue was reserved solely to the HHS Director; (2) sufficient evidence supported the finding of a credible allegation of fraud; and (3)

there was not good cause to terminate or alter the suspension and, even if there was, Rashid's intent to sell the business obviated any need to consider good cause.

In January 2022, HHS Director Kelly Garcia issued a final decision in which she affirmed the agency action and rejected Rashid's three claims. On the first issue (notice) Director Garcia found that Iowa Administrative Code rule 44-79.2(8) applied to the notice that HHS needed to give, meaning that the agency only had to give notice within five days after suspension. As to the other two issues (a credible allegation of fraud and good cause to withdraw or reduce the suspension) Director Garcia affirmed and adopted the ALJ's ruling in full, relying on "the record, the state and federal regulatory framework, and [the] evidentiary standard for contested cases."

Rashid petitioned for judicial review in February 2022, raising the same three issues. The district court affirmed HHS, finding substantial evidence to support the factual findings and no errors of law. Rashid appealed to the supreme court, which transferred the matter to our court for resolution.

## II.    Standard of Review

Judicial review of agency action is governed by Iowa Code chapter 17A (2022), applying the standards found in Iowa Code section 17A.19(10). "The petitioner challenging agency action has the burden of demonstrating the prejudice and invalidity of the challenged agency action." C*olwell v. Iowa Dep't of Hum. Servs.*, 923 N.W.2d 225, 231 (Iowa 2019) (citing Iowa Code § 17A.19(8)(a)).

When the General Assembly has not clearly vested an agency with interpretative authority, we review interpretative issues for corrections of error at

law. *See* Iowa Code § 17A.19(10)(c); *Gartner v. Iowa Dep't of Pub. Health*, 830 N.W.2d 335, 343 (Iowa 2013). We apply this standard to the first issue concerning notice.

When an agency is tasked with deciding a factual issue, such as with the second issue concerning a credible allegation of fraud and underlying the third issue concerning good-cause exceptions, the agency's factual findings must be upheld unless they are "not supported by substantial evidence in the record before the court when that record is viewed as a whole." Iowa Code § 17A.19(10)(f); *see also Burton v. Hilltop Care Ctr.*, 813 N.W.2d 250, 256 (Iowa 2012). In reviewing the evidence, we are instructed to "consider only the evidence favorable to the [agency's] findings, whether or not contradicted." *Cargill, Inc. v. Conley*, 620 N.W.2d 496, 502 (Iowa 2000).

When an agency is granted discretion, as with the third issue about good-cause exceptions, we review for whether that discretion was abused. An abuse of discretion is proven when the agency exercises its discretion "on grounds clearly untenable or to an extent clearly unreasonable." *Marovec v. PMX Indus.*, 693 N.W.2d 779, 782 (Iowa 2005); *see also* Iowa Code § 17A.19(10)(n). "An abuse of discretion also means the decision lacked rationality and was made clearly against reason and evidence." *Marovec*, 693 N.W.2d at 782.

## III.    Discussion

Rashid advances the same three issues on appeal that were decided by the district court and the agency. First, Rashid contends that HHS had to provide a fifteen-day notice before suspending Medicaid payments under Iowa Administrative Code rule 441-79.2(7)(b). Second, Rashid challenges the credible-

allegation-of-fraud finding. And third, Rashid contends a good-cause exception should have applied to withdraw or partially reduce the suspension. We affirm the district court on each argument.

### A. Requirement of Notice[2]

Rashid first argues that HHS had to give notice fifteen days before suspending Medicaid payments. Rashid generally contends that HHS rule 79.2(7)(b), which requires a fifteen-day notice before the agency sanctions any person in good standing with all program requirements, governs. Rashid concedes that rule 79.2(8)—which requires notice within five days of suspension—may apply too. In any event, Rashid urges the rules are compatible and require that notice be given at least fifteen days before suspension, in line with rule 79.2(7)(b). Iowa Admin. Code r. 441-79.2(7)(b), (8); *see* Iowa Code § 4.7 ("If a general provision conflicts with a special or local provision, they shall be construed, if possible, so that effect is given to both."). We disagree, finding the two provisions are irreconcilable and the more-specific rule 79.2(8) controls.

In pertinent part, rule 79.2(8), entitled "suspension or withholding of payments," explains that "[i]f the department withholds or suspends payments, it shall notify the person in writing within the time frames prescribed by federal law for cases related to a credible allegation of fraud." Iowa Admin. Code

---

[2] Rashid's brief includes a color-coded chart with arrows and text concerning this issue. Even if such a chart is permitted under our rules of appellate procedure, we used a word processor to calculate the word count for the appellant's brief, and it appears the thirty-one words contained in the chart were not included in counsel's word-count certification. We join the growing chorus of courts to express our displeasure with attempts to evade word limitations. *See* Douglas E. Abrams, *Sanctions for Evading Maximum Page Limits on Court Filings*, 73 J. Mo. B. 316 (2017) (collecting cases).

r. 441-79.2(8); *see also Harris v. McRae*, 448 U.S. 297, 301 (1980) (noting states that participate in Medicaid "must comply with the requirements of Title XIX" establishing Medicaid). The applicable federal regulation provides:

> The State agency must send notice of its suspension of program payments within the following timeframes:
> (i) Five days of taking such action unless requested in writing by a law enforcement agency to temporarily withhold such notice.
> (ii) Thirty days if requested by law enforcement in writing to delay sending such notice, which request for delay may be renewed in writing up to twice and in no event may exceed 90 days.

42 C.F.R. § 455.23(b)(1). In short, notice must be sent within five days after the suspension of payments for credible allegations of Medicaid fraud, unless the exceptions triggered by a law enforcement request apply. This more-specific rule governs over a more-general provision. *See* Iowa Code § 4.7 ("If the conflict between the provisions is irreconcilable, the special or local provision prevails as an exception to the general provision.").

Although the plain language of the federal regulation disposes of the issue, the state and federal rulemaking history also reflect intent that notice be given only after suspension. As HHS noted in a 2014 response to a comment recommending notification before suspension, "[m]ailing the notice of payment suspension prior to the actual imposition of the payment suspension may impact the Department's ability to protect Medicaid funds against fraud, waste or abuse if the provider receives advance notice of the payment suspension prior to implementation of the suspension." 37 Iowa Admin. Bull. 793–97 (Oct. 29, 2014). Federal regulators similarly considered and decided against the idea "that providers should be given notice of a payment suspension prior to such action being taken," due to "the sensitive nature of a fraud investigation which may be jeopardized by such notice."

Medicaid Suspension of Payments Requirements, 76 Fed. Reg. 5862, 5937 (Feb. 2, 2011) (codified at 42 C.F.R. pt. 455).  Expressing the same policy concern as HHS, federal regulators voiced their expectation "that State agencies will act appropriately so as not to jeopardize any investigation."  *Id.*  Both rulemaking histories reflect an intent for notice to only be given after suspension, which confirms our reading of the text.

We affirm the district court's ruling that HHS did not commit a legal error when it did not provide Rashid advance notice it was suspending payments.

## B.  Credible Allegation of Fraud

Rashid's second argument revolves around HHS determining there was a credible allegation of fraud.  Rashid contends the record lacks substantial evidence supporting the determination related to Medicaid, and that HHS failed to conduct an investigation or review "all allegations, facts, and evidence" related to the case.  We disagree.

We find substantial evidence supported a credible allegation of fraud perpetrated by Rashid.  The federal rules define a "credible allegation of fraud" as

> an allegation, which has been verified by the State, from any source, including but not limited to the following:
> (1) Fraud hotline tips verified by further evidence.
> (2) Claims data mining.
> (3) Patterns identified through provider audits, civil false claims cases, and law enforcement investigations.  Allegations are considered to be credible when they have indicia of reliability and the State Medicaid agency has reviewed all allegations, facts, and evidence carefully and acts judiciously on a case-by-case basis.

42 C.F.R. § 455.2.  In reviewing whether there was a credible allegation of fraud against Rashid, HHS reviewed the notice from MFCU, an invoice review completed by federal investigators, an email request for ongoing law enforcement assistance,

and a state field auditor's report detailing the potential Medicaid exposure due to Rashid's fraud. On the other side of the ledger, HHS also considered Rashid's contentions related to the price-regulated drug program and the financial audit. As a whole, this evidence supports HHS finding a credible allegation of fraud against Rashid, particularly given our highly deferential standard of review. *See* Iowa Code § 17A.19(10)(f); *Burton*, 813 N.W.2d at 256.

Rashid also contends that HHS had to conduct an investigation and review all information related to the case before finding a credible allegation of fraud. We reject this argument as well. No regulations expressly require HHS to begin a Medicaid fraud investigation; investigations can begin either with HHS (or its subunits) or MFCU. *See* 42 C.F.R. §§ 455.2, .23, 1007.9. When MFCU initiates an investigation, it "may refer any provider with respect to which there is pending an investigation of a credible allegation of fraud under the Medicaid program to the Medicaid agency for payment suspension in whole or part under § 455.23 of this title." 42 C.F.R. § 1007.9(e)(1). In terms of the detail required, "[r]eferrals may be brief but must be in writing and include sufficient information to allow the Medicaid agency to identify the provider and to explain the credible allegations forming the ground for the payment suspension." 42 C.F.R. § 1007.9(e)(2).

MFCU is not part of HHS. *See* 42 U.S.C. § 1396b(q)(2) (providing the requirements for a state MFCU, including that MFCU "is separate and distinct from the single State agency that administers or supervises" Medicaid). When investigations originate with MFCU, HHS has only the information MFCU makes available and must evaluate the information provided. HHS contends state law renders the underlying MFCU law enforcement records confidential. *See* Iowa

Code § 22.7 (describing public records that typically must "be kept confidential"). We need not decide that question on this record, though we recognize that (under current law) MFCU is a law enforcement entity housed within the Iowa Department of Inspections and Appeals rather than HHS, and we decline to second-guess the information-sharing practices of state agencies as they navigate pending criminal investigations. Regardless of whether section 22.7 applies to the investigative file here, there is no dispute that MFCU did not produce its full investigative file to HHS. HHS could only review the information before it, and we find the agency was not required to do more.

Rashid also reiterates on appeal its claim that, while there was evidence of Medicare fraud, there was no evidence of Medicaid fraud. We disagree. The federal search warrant authorized seizure of "[a]ny and all records relating to the purchase, ordering, or procurement of medications; medication inventories, the delivery of medications; the return of medications; the transfer, disbursement or disbursal or medications; and the payment and billing for medications." By its nature, the warrant's inclusive language would include records related to Medicaid claims, and the federal warrant was supported by probable cause. *See generally* Fed. R. Crim. P. 41(d). We also note that HHS expressly considered whether the Medicare concerns likely extended to Medicaid and relied on an audit report to evaluate this potential exposure. While this is a type of inferential reasoning, we agree with the agency's observation—supported by its expertise in this area—that "the Medicare program and Medicaid program are similar programs in terms of government insurance to selected groups and the allegation of large scale fraud against one is enough to infer an issue with the other program sufficient to justify

withholding all such payments." While perhaps not enough to return a criminal conviction or find civil liability at jury trial, the standard here is far lower, and we conclude the evidence before HHS crossed the substantial-evidence threshold.

### C. Good-Cause Exception

Last, Rashid argues that a good-cause exception under federal administrative rule 455.23(e) and (f) should apply to withdraw or reduce its suspension. Rashid claims it was the "sole source of essential specialized services in [its] community," that it serves medically underserved areas, and that its suspension could be limited to specific drugs tied to the alleged fraud. Rashid posits each reason as independently sufficient for the withdrawal or reduction of its suspension. However, the rules cited by Rashid are permissive, rather than mandatory, and grant discretion to HHS. *See* 42 C.F.R. § 455.23(e), (f) (providing "[a] State *may* find that good cause exists" to either not suspend payments or suspend payments in part (emphasis added)). We see no abuse of that discretion on this record, as substantial evidence supports HHS declining to apply any of the exceptions, and we conclude Rashid has not carried its burden to establish the invalidity of any agency action.

Rashid's first arguments for a complete withdrawal of its suspension are based in rule 455.23(e)(4). Under this provision, the State can withdraw suspension if:

> Beneficiary access to items or services would be jeopardized by a payment suspension because of either the following:
> (i) An individual or entity is the sole community physician or the sole source of essential specialized services in a community.
> (ii) The individual or entity serves a large number of beneficiaries within a HRSA [(Health Resources and Services Administration)]-designated medically underserved area.

42 C.F.R. § 455.23(e)(4). Rashid's claim turns on offering free home delivery and that it is allegedly the only supplier of a particular pill dispenser within the area. HHS disagreed, finding Rashid is simply a "generic pharmacy that does some delivery and packs some pills, nothing more," and we see no error in this reasoning or relying on these facts as a rationale for not applying the exception. *Accord NSCH Rural Health Clinic v. Snyder*, 321 So. 3d 565, 573–74 (Miss. Ct. App. 2020) (holding that a dentistry's satellite campuses and extended hours did not constitute a specialized service under federal rule 455.23(e)(4)(i) and its state-level counterpart). HHS's conclusion is confirmed by the MCOs reporting Rashid's suspension would not jeopardize access to pharmaceutical services. We find substantial evidence supports the agency's rejection of a good-cause exception under rule 455.23(e)(4)(i).

Rashid next argues for a good-cause exception for serving an HRSA-designated medically underserved area under rule 455.23(e)(4)(ii). HHS determined Rashid's suspension would not jeopardize access to services for a large number of persons in the designated area. This finding was also supported by information from the MCOs in Rashid's service area, and we find substantial evidence supports HHS's determination in light of the agency's expertise.

Third, Rashid argues for a partial exception to apply to its suspension through one of several restrictions. Rashid suggests restricting the suspension to particular drugs, to the percentage of drugs flagged across the board in its business, to brand-name drugs (which were the focus of the audit), or to the drugs

not covered in the internal examination or audit performed by Rashid. The applicable regulation allows a partial suspension where the State finds:

> (i) The credible allegation focuses solely and definitively on only a specific type of claim or arises from only a business unit of a provider; and
> (ii) The State determines and documents in writing that a payment suspension in part would effectively ensure that potentially fraudulent claims were not continuing to be paid.

42 C.F.R. § 455.23(f)(3). But here, HHS found the suspected fraud "appear[ed] to cut across Rashid's business," which supports rejecting a partial suspension. The record in this appeal is voluminous, and we have little trouble concluding there is evidence of widespread fraud, not limited to certain drugs. Substantial evidence supports the agency's rejection of a partial suspension under rule 455.23(f)(3), and we find HHS did not abuse its discretion in declining to apply this exception.

## IV.    Disposition

We reject Rashid's arguments on appeal and affirm the district court's decision on judicial review.

**AFFIRMED.**