# IN THE COURT OF APPEALS OF IOWA

No. 22-1421
Filed June 7, 2023

**P.M. LATTNER MANUFACTURING CO. and ACCIDENT FUND GENERAL INSURANCE CO.,**
    Plaintiffs-Appellees,

**vs.**

**MICHAEL RIFE,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Polk County, Michael D. Huppert, Judge.

A claimant appeals a district court order following judicial review of his action for workers' compensation benefits. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

Anthony J. Olson of Rush & Nicholson, P.L.C., Cedar Rapids, for appellant.

Laura Ostrander, Office of the General Counsel Accident Fund Holdings, Inc. d/b/a AF Group, Lansing, Michigan, for appellees.

Heard by Schumacher, P.J., and Chicchelly and Buller, JJ.

**SCHUMACHER, Presiding Judge.**

Michael Rife appeals the district court's order following judicial review of his workers' compensation claim. He contends the district court improperly found he was not entitled to reimbursement for an independent medical examination (IME). He also alleges the district court wrongly remanded to the commissioner to determine what credit Lattner Manufacturing and its workers' compensation insurance carrier, Accident Fund General Insurance Co., (collectively Lattner) is entitled to for benefits paid for a prior injury sustained by Rife. We determine the district court erred by finding Rife was not entitled to any reimbursement for the IME, as this issue was not preserved. We remand to the commissioner to determine the fee related to the impairment rating for his right shoulder rather than the examination as a whole. We conclude the court properly remanded for the commissioner to determine what credit Lattner was entitled to for compensating Rife's prior injury. Accordingly, we affirm in part, reverse in part, and remand to the workers' compensation commissioner.

## I.    Background Facts & Proceedings

Rife began work as a welder at Lattner in 2002. He injured his right shoulder on February 4, 2009. Following several evaluations[1] and treatment, the parties resolved the injury via a full commutation of benefits, which was approved by the commissioner in September 2010. That commutation established Rife suffered a permanent disability equal to 29.6% of the body as a whole.[2] Lattner paid Rife a

---

[1] Various evaluations gave Rife an impairment rating for his right upper extremity of 12%, 14%, and 15% for the 2009 injury.

[2] At the time, Rife's shoulder injury did not qualify as a scheduled injury under Iowa Code chapter 85 (2010).

lump sum of $40,000. As part of the settlement, Lattner received a credit for permanent impairment to Rife's shoulder against any future injuries to the same shoulder.

Rife suffered another workplace injury to his right shoulder on August 6, 2018. Following surgery, the employer-authorized physician, Dr. Matthew White, recommended physical therapy. A functional capacity evaluation (FCE) was conducted November 13, 2019, at E3 Work Therapy, but was deemed invalid due to poor effort by Rife. Based on the invalid FCE, Dr. White opined that he was unable to provide recommendations for work or function. Dr. White recommended another FCE be conducted in February 2020. That subsequent evaluation never occurred.

Rife undertook his own FCE with Daryl Short, DPT, in February. In July, Rife obtained an impairment rating from Dr. Sunny Kim. Dr. Kim gave the rating after conducting an independent exam and reviewing Rife's medical records. Dr. Kim gave Rife a 19% impairment rating to the right upper extremity, or 11% of the body as a whole. Dr. Kim noted that Rife inquired about an impairment rating to his right ankle based on a separate incident from 2005. Dr. Kim declined to provide a rating for that injury.

Rife filed an original notice and petition for workers' compensation benefits on August 23, 2019. Following hearing, the deputy commissioner issued an arbitration decision on August 20, 2021. As relevant here, the deputy found Lattner was required to reimburse the full cost of Dr. Kim's IME. And the deputy determined Lattner was not entitled to credit for the payment made for the 2009 injury because the apportionment statute did not provide a formula for apportioning

the benefits and it was unclear what impairment rating was being compensated at the time. Lattner appealed to the commissioner. After some independent analysis of the issues, the commissioner affirmed the decision of the deputy.

Lattner then petitioned for judicial review, claiming the commissioner wrongly found Lattner was liable for the full cost of the IME and did not deserve credit for the 2009 injury. The district court found Rife had not complied with the statutory requirements found in section 85.39 (2018) that delineated the process by which a claimant can be reimbursed for an IME. As such, the district court determined that Rife was not entitled to any reimbursement. And the court found the commissioner wrongly ignored the commutation agreement and relevant law when it denied Lattner credit for the 2009 injury. The district court remanded the case to the commissioner to reconsider the matter of apportionment between the 2009 and 2019 injuries. Rife appeals.

## II. Standard of Review

Our review is governed by chapter 17A. *See Larson Mfg. Co. v. Thorson*, 763 N.W.2d 842, 850 (Iowa 2009). "It is well settled that '[t]he interpretation of workers' compensation statutes and related case law has not been clearly vested by a provision of law in the discretion of the agency.' We therefore do not defer to the commissioner's interpretation of the law." *Id.* (internal citation omitted)

We defer to the commissioner's factual determinations if they are supported by substantial evidence. *Id.* Evidence is substantial if it "would be deemed sufficient by a neutral, detached, and reasonable person, to establish the fact at issue when the consequences resulting from the establishment of that fact are understood to be serious and of great importance." Iowa Code § 17A.19(10)(f)(1).

We will only reverse the commissioner's application of law to the facts if it was "irrational, illogical, or wholly unjustifiable." *Larson*, 763 N.W.2d at 851.

## III.     Independent Medical Examination

Rife contends the district court improperly found he was not entitled to reimbursement for the costs of the IME Dr. Kim conducted. The district court found that because Rife refused to meaningfully participate in Lattner's requested evaluations, he was not entitled to reimbursement for his IME under section 85.39. Upon our review, we determine the district court improperly reversed the commissioner on this issue because the matter was not properly preserved for the district court's review.

"It is well-settled that judicial review of administrative action is limited to questions considered by the agency." *Pruss v. Cedar Rapids/Hiawatha Annexation Special Loc. Comm.*, 687 N.W.2d 275, 284 (Iowa 2004); *see also Cargill, Inc. v. Conley*, 620 N.W.2d 496, 500 (Iowa 2000) ("It has long been the law in Iowa that claims not raised before the industrial commissioner will not be considered by the courts on judicial review.").

Lattner did not contest whether Rife triggered the reimbursement provision in section 85.39. Instead, while before the deputy commissioner, Lattner merely claimed, "[T]he Defendants should not be assessed the cost of any part of the evaluations that addressed the right ankle injury." Similarly, the matter was not raised or decided by the commissioner. In their appeal brief to the commissioner, Lattner identified the issue as follows: "Whether the Claimant's IME expense was limited to the typical fee charged by a provider to provide an impairment rating in the area where the examination is conducted." Lattner did not claim Rife was not

entitled to any reimbursement, they only contested the amount. The commissioner found, "On appeal, defendants do not take issue with the deputy's analysis or rationale in finding that the reimbursement provisions of Iowa Code section 85.39 were triggered in this case, so I will not address or disturb that portion of the arbitration decision in this appeal decision." The commissioner was clear that it was not considering whether Rife triggered section 85.39.

Because Lattner did not contest whether Rife triggered the reimbursement provision found in section 85.39 to the deputy commissioner or the commissioner, error on whether section 85.39 was triggered was not preserved. We reverse the district court with respect to such determination. But our analysis does not end here.

Lattner argued they should not have to pay the portion of Rife's examination that related to a non-work-related injury and the costs should be limited to the typical fee charged by a provider to provide an impairment rating in the area where the examination is conducted. The legislature set forth clear language in changes to Iowa Code section 85.39(2) in 2017, which reads:

> An employer is only liable to reimburse an employee for the cost of an examination conducted pursuant to this subsection if the injury for which the employee is being examined is determined to be compensable under this chapter or chapter 85A or 85B. An employer is not liable for the cost of such an examination if the injury for which the employee is being examined is determined not to be a compensable injury. A determination of the reasonableness of a fee for an examination made pursuant to this subsection, shall be based on the typical fee charged by a medical provider to perform an impairment rating in the local area where the examination is conducted.

We have previously held that section 85.39(2) provides for reimbursement for an impairment rating rather than the cost of an examination. *See MidAmerican*

*Const. LLC v. Sandlin*, No. 22-0471, 2023 WL 2148754, at *4 (Iowa Ct. App. Feb. 22, 2023). Lattner is not responsible to reimburse costs from the examination that did not relate to the impairment rating of the compensable—that is, work-related—injury to Rife's right shoulder. The commissioner's determination that Lattner had to reimburse the full costs of the examination was erroneous under the 2017 changes in the law.

That said, it is unclear from the record before us what portion of Dr. Kim's fee related to the impairment rating for his right shoulder rather than the examination as a whole. The amount of the typical fee charged by a medical provider to perform an impairment rating in the local area where the examination is conducted is absent from this record. So we remand to the commissioner to determine what portion of Dr. Kim's examination related to the impairment rating of Rife's right shoulder.

## IV.     Successive Injury Credit

Rife contends the district court erred by finding the commissioner failed to apportion benefits between the 2009 and 2019 injuries. The deputy commissioner found that it could not apportion benefits between the injuries because the code did not provide a means to apportion between scheduled and unscheduled injuries. And the deputy commissioner indicated it was unclear what impairment rating the 2010 agreement used for the shoulder itself, rather than the body as a whole. The commissioner affirmed, and added to the deputy's analysis by noting that benefits for industrial disability include factors other than functional impairment—requiring a false comparison to apportion between the 2009 rating of 29.7% to Rife's body as a whole and the 2019 shoulder injury's 19% impairment rating. The district

court found both the deputy and commissioner misapplied the statute, section 85.34(7). Moreover, the court determined the deputy and commissioner failed to consider the effect of the 2010 agreement. Thus, the court remanded for a decision by the district court as to how to apportion benefits between the injuries and what credit Lattner was entitled to for benefits already paid in 2010.

When considering whether section 85.34(7) supports apportionment in this case, both parties highlight the legislative history of chapter 85. But, "[a]ny interpretive inquiry . . . begins with the language of the statute at issue." *Doe v. State*, 943 N.W.2d 608, 610 (Iowa 2020). "If the 'text of a statute is plain and its meaning clear, we will not search for a meaning beyond the express terms of the statute or resort to the rules of construction.'" *Id.* (quoting *In re Estate of Voss*, 553 N.W.2d 878, 880 (Iowa 1996)). Therefore, we only turn to other tools of statutory interpretation, such as examining legislative history, if the terms of the text are ambiguous. *Id.*

So we turn to the text of section 85.34(7). That section provides:

> An employer is liable for compensating only that portion of an employee's disability that arises out of and in the course of the employee's employment with the employer and that relates to the injury that serves as the basis for the employee's claim for compensation under this chapter, or chapter 85A, 85B, or 86. *An employer is not liable for compensating an employee's preexisting disability that arose out of and in the course of employment from a prior injury with the employer, to the extent that the employee's preexisting disability has already been compensated under this chapter, or chapter 85A, 85B, or 86.* An employer is not liable for compensating an employee's preexisting disability that arose out of and in the course of employment with a different employer or from causes unrelated to employment.

Iowa Code § 85.34(7) (emphasis added).

Rife contends a distinction must be made between industrial disabilities, which are governed by what is now section 85.34(2)(v), and scheduled injuries, found in the rest of section 85.34(2). According to Rife, section 85.34(7) only gives credit to the employer for similar injuries—scheduled and scheduled, or unscheduled and unscheduled. But the statute does not provide for that interpretation. Instead, it is unambiguous: an employer is not liable for an employee's "preexisting disability." The statute makes no distinction between the type of disability the employee incurred. We cannot create ambiguity where there is none. Because the statute unambiguously directs that employers are not liable for an employee's preexisting disability incurred through a work-place injury with the same employer, thereby prohibiting double recovery for the same injury, the deputy and commissioner misinterpreted section 85.34(7).

Rife contends the statute is inoperative because it does not provide a means to apportion benefits between industrial disabilities and scheduled disabilities. In support of that contention, Rife cites *Roberts Dairy v. Billick*, 861 N.W.2d 814 (Iowa 2015). In that case, our supreme court found a prior version of section 85.34(7) was ambiguous because, in part:

> Iowa Code section 85.34 provides no mechanism for apportioning the loss between the present and previous employers. This is in direct contrast to Iowa Code section 85.34(7)(b), which explains exactly how the offset is to be calculated when an employee suffers successive injuries while working for the *same* employer. If the legislature wanted to require a credit or offset of disability benefits in cases of successive unscheduled injuries with different employers, it logically would have prescribed how it should be determined.

*Roberts Dairy*, 861 N.W.2d at 822 (emphasis in original). Rife contends that *Roberts Dairy* requires an express method of apportionment.

We believe Rife's reading of *Roberts Dairy* takes the court's reasoning too far. First, that quoted language above was used to explain that the statute, as written in 2015, was ambiguous. *Id.* It did not establish that a statute must expressly provide a formula for apportioning benefits between injuries. Moreover, just a couple of months after *Roberts Dairy*, our supreme court decided another similar case. In *Warren Properties v. Stewart*, the court explained, "We recognize the legislature did not establish a specific method of apportionment for successive disabilities with different employers when no market reevaluation has taken place, as it did for successive disabilities with the same employer." 864 N.W.2d 307, 317 (Iowa 2015). Despite that, the court found, "[A]lthough a specific method of apportionment was not established, the legislature did not intend to exclude from apportionment successive disabilities with different employers when no market reevaluation has occurred."[3] *Id.* In line with *Warren Properties*, the lack of express means to apportion benefits does not preclude the application of section 85.34(7).

And here we are dealing with benefits paid by the same employer. Rife was previously compensated under chapter 85 by Lattner for his first shoulder injury via the 2010 commutation agreement. *See* Iowa Code §§ 85.45; 85.47 (defining the method of obtaining a commutation and basis for a commutation, respectively). Thus, pursuant to section 85.34(7), Lattner is entitled to a credit for the payment of benefits for that injury.

---

[3] The court concluded: "The compensation formula provided by the legislature in section 85.34(2)(u) [now section 85.34(2)(v)], used for all successive disabilities with separate employers, can be used in conjunction with the rule in section 85.34(7)(a) to apportion the loss in earning capacity when a market reevaluation has not occurred." *Warren Props.*, 864 N.W.2d at 317.

Still, the question remains: how much to credit to Lattner? We cannot decide that question on the record before us. "When the commissioner fails to consider all the evidence, the appropriate remedy is 'remand for the purpose of allowing the agency to re-evaluate the evidence' unless the facts are established as a matter of law.'" *JBS Swift & Co. v. Hedberg*, 873 N.W.2d 276, 281 (Iowa Ct. App. 2015) (citation omitted). The commissioner ignored the 2010 commutation agreement when it found the benefits Lattner paid via that agreement for an industrial disability was proverbial apples to oranges for purposes of apportioning between it and the recent scheduled injury. But, as described above, that conclusion is not supported by section 85.34(7). Thus, we affirm the remand to the commissioner to determine what credit Lattner is entitled to given the benefits Lattner paid pursuant to the 2010 commutation agreement.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**